NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3601-13T2

ARIEL SCHOCHET,

     Plaintiff-Appellant,

v.

SHARONA SCHOCHET
(n/k/a GROSSBERG),

     Defendant-Respondent.

APPROVED FOR PUBLICATION

April 23, 2014

APPELLATE DIVISION

_____

Submitted February 28, 2014 - Decided April 23, 2014

Before Judges Fisher, Espinosa and Koblitz.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-223-11.

Mark Musella (Mason & Musella), attorney for appellant.

Kantrowitz, Goldhamer & Graifman, P.C., attorneys for respondent (William T. Schiffman, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

We granted plaintiff's application to seek emergent relief from an order that denied his request for the appointment of experts at public expense to testify at an ability to pay

hearing[1] conducted pursuant to Rule 1:10-3.  Relying upon Pasqua v. Council, 186 N.J. 127 (2006), he argues that such appointment is constitutionally required because he faces possible incarceration if the trial court finds he willfully failed to pay his support obligations.  For the reasons that follow, we conclude he has failed to show that the appointment of experts at public expense is constitutionally required in this case.

The facts and procedural history, as represented by the parties, can be summarized as follows:

Plaintiff Ariel Schochet was a portfolio manager at several hedge funds before "the market collapse in 2007."  However, he dates the downturn in his income to several years later, the year before the parties' 2012 divorce, when he lost a high-paying job. He states that, since then, he has been unable to duplicate that level of income.

The Amended Judgment of Divorce required plaintiff to pay weekly amounts of $1500 for alimony and $390 for child support. Later orders required the payment of $50 per week toward arrears

_____

[1] This hearing is now more aptly called an "ability to comply hearing" as set forth in Directive #02-14, (the 2014 Directive) issued by the Administrative Office of the Courts on April 14, 2014, and available at http://www.judiciary.state.nj.us/ directive/2014/dir_02_14.pdf (last visited April 15, 2014).

and increased the child support based upon a cost of living adjustment.

Plaintiff represents that he now earns $600 per week. He states that, as of February 2014, his arrears were approximately $250,000 and continue to increase by almost $1500 per week.

Plaintiff was first incarcerated for non-support in August 2013. His incarceration was stayed by the Supreme Court in October 2013. By order dated November 7, 2013, the trial court: denied plaintiff's request that he be granted leave to proceed as an indigent; appointed counsel to represent him for an ability to pay hearing and "for future filings and hearings on that issue that may result in incarceration"; granted his motion for the adjournment of his ability to pay hearing; and scheduled the hearing for November 12, 2013. The ability to pay hearing was further adjourned and scheduled for February 4, 2014.

On January 31, 2014, less than one week before the scheduled hearing, plaintiff's counsel wrote to the Bergen County Counsel and requested that the County retain David B. Stein, Ph.D., an employability expert, and an as-yet-unidentified certified public accountant for plaintiff. He stated:

> Both experts are needed to testify as to Mr. Schochet's employability and his past, present and future earnings, income, job placement and his current ability to pay

child support. It is necessary and essential to our case and to the issue of Mr. Schochet's current ability to pay child support that we retain these experts.

His requests were rejected by Bergen County Counsel and denied by the trial court by order dated February 6, 2014. An ability to pay hearing commenced in February 2014 and was adjourned to April 30, 2014, in part, to permit the trial court to consider the results of plaintiff's ninety-day review by his current employer.

Plaintiff submitted an application for leave to file an emergent motion allowing him to appeal from the trial court's order denying his request. As defendant correctly points out, this order is interlocutory. Nonetheless, we exercise our discretion to grant leave to appeal from the February 6, 2014 order in the interest of justice, R. 2:2-4, and now affirm the trial court's order.

In Pasqua v. Council, supra, the Supreme Court held that "the appointment of counsel to assist parents found to be indigent and facing incarceration at child support enforcement hearings" was mandated by both the Fourteenth Amendment Due Process Clause of the United States Constitution[2] and the New

---

[2] The United States Supreme Court has since held that the appointment of counsel in such proceedings is not automatically required by the United States Constitution. Turner v. Rogers,
(continued)

Jersey Constitution, Article I, Paragraph 1. Id. at 146. Plaintiff argues that Pasqua also requires the appointment of experts to testify at his ability to pay hearing. We disagree.

The 2014 Directive regarding the enforcement of child support orders identifies two issues a trial court must decide when an obligor is taken into custody on a child support-related warrant.[3] First, the trial court must determine "whether the obligor is indigent for representation purposes." 2014 Directive, supra, at 2. Then, the trial court must "make a second finding as to the obligor's ability to comply with the current child support obligation, that is, a finding as to the obligor's 'ability to pay.'" Ibid.

As a preliminary matter, there has been no finding that plaintiff is indigent. He represents that he is currently employed, earning $600 per week.[4] Moreover, although Pasqua

---

(continued)
___ U.S. ___, ___, 131 S. Ct. 2507, 2520, 180 L. Ed. 2d 452, 466 (2011).

[3] Directives have the force of law. R.K. v. D.L., 434 N.J. Super. 113, 130 n.7 (App. Div. 2014).

[4] The 2014 poverty guideline for New Jersey ranges from $11,670 for a one-person household to $40,090 for an eight-person household. U.S. Dep't of Health & Human Servs., 2014 Poverty Guidelines, available at http://aspe.hhs.gov/poverty/14poverty. cfm (last visited April 11, 2014). Plaintiff contends that his income is less than 125% of the federal poverty guidelines because he should not be considered a one-person household in
(continued)

requires the appointment of counsel for indigent obligors because they face the possibility of incarceration, <u>ibid.</u>, it is silent as to other services that must be provided to the indigent obligor to protect his or her constitutional rights.

Central to the Court's ruling in <u>Pasqua</u> was its concern that, "[w]hen an indigent litigant is forced to proceed at an ability-to-pay hearing without counsel, there is a high risk of an erroneous determination and wrongful incarceration." <u>Pasqua</u>, <u>supra</u>, 186 <u>N.J.</u> at 145. Plaintiff has failed to show any increased risk of an erroneous determination if his requested relief is denied.

Directive #15-08, (the 2008 Directive)[5] issued by the Administrative Office of the Courts on November 17, 2008, includes forms that detail the extensive inquiry associated with an enforcement hearing, including the Probation Child Support Enforcement Obligor Questionnaire, CN 10819 (the Obligor Questionnaire), and the checklist of questions to be asked at the enforcement hearing, CN 11212.

_____

(continued)
light of the fact that his wages are garnished to pay his support obligation. He does not identify the number of dependents he claims.

[5] Directive #15-08 is available at <u>http://www.judiciary.state</u>. nj.us/directive/2008/dir_15_08.pdf (last visited April 11, 2014).

Prior to the ability to pay hearing, the Probation Department elicits information from the obligor to complete a questionnaire that provides the court with relevant facts such as: the obligor's residence status; whether support is paid on another case; the number of dependents; whether the mortgage or rent payment is current; employment status and history; any reason for unemployment and the length of unemployment; other sources of income such as general assistance, disability, or workers compensation; whether the obligor has medical insurance; the obligor's monthly expenses for housing, loans, support obligations, medical insurance, household utilities, and other household expenses; the value of assets; and details of the obligor's total debts, including loan balances, medical debts, debts owed to other courts, credit card balances, and civil judgments owed.

The trial court also addresses the obligor directly. The 2008 Directive provides suggested inquiries to assist the court to clarify "inconsistent, inconclusive or ambiguous answers," determine why support has not been paid and how much the obligor can pay that day, and to ensure the obligor has a plan to address arrearages. See id. at 23. Pursuant to the 2014 Directive, the trial court is further required to make "specific factual findings regarding the obligor's ability to comply with

the child support obligation" and, if coercive incarceration is ordered, the court's justification for ordering it. 2014 Directive, supra, at 2-3; see also id. at 5-7 (Revised Form promulgated by Directive #02-14, CN 11213).

The information provided by the Obligor Questionnaire and the court's further questioning can reasonably be expected to provide the trial court with sufficient information to make the required determination in all but the extraordinary case.[6] Although not addressing the adequacy of the information and inquiry conducted pursuant to the 2008 Directive, plaintiff's argument presumes its insufficiency. In support of this motion, plaintiff's counsel states:

> In order to show that he is unable to secure [a job paying enough to cover his obligation], the Plaintiff has prepared hundreds of pages of employment search documents which show the evidence of his search within and outside his primary field.
>
> To make a proper determination, the court will need to examine the evidence presented and evaluate if the Plaintiff has made an appropriate job search commensurate with his history and experience. I believe that for the court to make this evaluation, the specifics of the employability of the Plaintiff are sufficiently complex that in order for a just decision to be made, an expert is needed that would qualify the

---

[6] It hardly bears noting that the case in which the financial information for an indigent obligor would be so complex as to require expert testimony will be extraordinary indeed.

> Plaintiff's employability and provide an independent analysis.
>
> . . . Without the expert testimony, the Court will be asked to make this determination without the proper foundation as to the specifics of Plaintiff's area of expertise and how the marketability for such services has materially changed in the past nine years.

Plaintiff has identified no documents other than the "hundreds of pages of employment search documents" that require expert analysis. In relying upon the fact that similar expert testimony is frequently admitted in Family Court, he blurs the very real distinction between the issue decided at an ability to comply hearing and that decided when similar evidence is considered at a plenary hearing.

The Rule 1:10-3 hearing is not a plenary hearing to decide the appropriate amount of support an obligor should pay. That amount has been determined, either by the court following a trial or post-judgment motion, or by the parties themselves. The hearing is also not a substitute for an appeal or a motion to modify the obligation based on changed circumstances. The hearing comes about because an obligor has failed to comply with an order. The objective of the hearing is simply to determine whether that failure was excusable or willful, i.e., the obligor was able to pay and did not. See Pasqua, supra, 186 N.J. at

145. It does not establish the future obligation of the party paying support.[7]

The Supreme Court has observed that the purpose of the <u>Rule</u> 1:10-3 proceeding is "to coerce the defendant into compliance with the court's order for the benefit of the private litigant." <u>Id.</u> at 140 (quoting <u>Essex Cnty. Welfare Bd. v. Perkins</u>, 133 <u>N.J. Super.</u> 189, 195 (App. Div.), <u>certif. denied</u>, 68 <u>N.J.</u> 161 (1975)). Before a court may order the ultimate coercive means, incarceration, "the court must find that the parent was capable of providing the required support, but willfully refused to do so." <u>Id.</u> at 141 n.2; <u>see also</u> <u>Milne v. Goldenberg</u>, 428 <u>N.J. Super.</u> 184, 198 (App. Div. 2012). Because incarceration "may be ordered only if made contingent upon defendant's continuing failure to comply with the order," <u>Pasqua</u>, <u>supra</u>, 186 <u>N.J.</u> at 140, the obligor is said to "possess[] the keys to the jailhouse door." <u>See</u> <u>id.</u> at 145.

An example helps to illustrate the difference between the two hearings. Let us assume an obligor with an annual income of $100,000 is ordered to pay weekly child support of $350 for two children. The obligor subsequently loses that employment and finds a job that pays $60,000 per year. If the trial court

_____

[7] The 2014 Directive observes, "In most situations, modifications of the child support obligation should occur as part of a separate filing." <u>Id.</u> at 3.

finds he or she has made a prima facie case of changed circumstances and holds a plenary hearing, the court will evaluate the "potential earning capacity of an individual" to determine an appropriate support obligation.  See Caplan v. Caplan, 364 N.J. Super. 68, 88-89 (App. Div. 2003) (quoting Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999)), aff'd, 182 N.J. 250 (2005).  That evaluation may result in the imputation of income to the obligor if the judge concludes that he or she "is, without just cause, voluntarily underemployed or unemployed."  Child Support Guidelines, Pressler and Verniero, Current N.J. Court Rules, Appendix IX-A at 2589 (2014) ("Imputing Income to Parents").  The Appendix provides guidance on the manner in which such income should be imputed.  Ibid.

The review of employment search evidence in an ability to comply hearing has a far more limited purpose: to determine whether the failure to pay was willful.  Let us assume the matter comes to court for enforcement of the $350 support order pursuant to Rule 1:10-3 because the obligor has paid only $250 per week and arrears have accumulated.  The court will not determine whether $250 per week is the appropriate level of support; it will determine what amount of the $350 court-ordered support the obligor was able to pay.  If the court should

determine that the obligor paid what he or she was able to pay, no incarceration would be warranted despite the accrual of arrears and the fact that the amount of support is unchanged. See 2008 Directive, supra, at 8 (stating that, in ordering coercive incarceration, "it is essential that the court at the hearing find the obligor has an ability to pay an amount acceptable to the court"); see also Pierce v. Pierce, 122 N.J. Super. 359, 361 (App. Div. 1973) (reversing an order entered following an ability to pay hearing and stating, "[N]owhere is demonstrated in the record before us the ability of defendant to comply with the order sought to be enforced by the coercive remedy."). As a result, the judge conducting an ability to comply hearing will generally not need to delve beyond determining whether the obligor has made a good faith effort to secure a reasonable level of employment.

Moreover, although plaintiff states he would retain such experts himself if not indigent, the admissibility of such testimony remains subject to N.J.R.E. 702. Expert testimony is admitted when the subject matter is "beyond the ken of the average [factfinder]," DeHanes v. Rothman, 158 N.J. 90, 100 (1999), and "will assist the trier of fact to understand the evidence or to determine a fact in issue." N.J.R.E. 702. No

showing has been made here that the subject matter of the expert testimony sought is beyond the ken of a Family Part judge.

The issue to be decided at an ability to comply hearing closely parallels determinations Family Part judges make on a daily basis concerning the evaluation of financial information provided through documents and testimony, generally without any expert testimony. In attempting to achieve a fair resolution of the economic issues of parties going through the emotionally charged process of divorce, judges review testimony, case information statements and other financial information, and necessarily make assessments of the parties' needs, wants, and ability to fund costs. That experience gives rise to the well-established deference paid to factual findings Family Part judges make that are supported by the evidence, Cesare v. Cesare, 154 N.J. 394, 412-13 (1998), deference that "is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare, supra, 154 N.J. at 412).

In particular, Family Part judges are well versed in reviewing the good faith of litigants who fail to meet their obligations in the full spectrum of post-judgment litigation. For example, in Milne, the former wife appealed from an order

that imposed community service hours upon her as a means of coercing her to comply with past orders regarding the payment of a joint federal income tax liability.  The trial court observed that the former wife "had 'a significant amount of money . . . [at] her disposal, while she was not complying with these court orders'" and had "intentionally 'prioritize[d]' her funds and ignored the obligation."  Milne, supra, 428 N.J. Super. at 199 (alterations in original).  Accordingly, the trial court found her "non-compliance was deliberately designed to delay satisfaction of the obligation" and concluded "her failure to pay was willful."  Ibid.

In sum, even in the absence of a finding of indigence, plaintiff has been afforded legal representation at public expense.  He has failed to show that the expert evidence he seeks is necessary to avert an enhanced "risk of an erroneous determination and wrongful incarceration," Pasqua, supra, 186 N.J. at 145, or even that such expert evidence would assist the trier of fact to evaluate evidence of a kind routinely reviewed by Family Part judges.  We therefore conclude that the appointment of experts was not constitutionally required under the facts of this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3601-13T2