**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0661-18T3

PREMIER HEALTH CENTER, PC,

     Plaintiff-Appellant,

v.

PRECISION BILLING LLC,
d/b/a PRECISION BILLING &
CONSULTING SERVICES, LLC,
PRECISION BILLING PROPERTIES,
LLC, d/b/a PRECISION BILLING &
CONSULTING SERVICES, LLC and
KELLY B. LANGSCHULTZ,

     Defendants-Respondents.

_____

Argued October 21, 2019 – Decided March 9, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6225-16.

Peter Y. Lee argued the cause for appellant.

J. Alvaro Alonso argued the cause for respondent Precision Billing LLC d/b/a Precision Billing & Consulting Services, LLC, and Kelly Langschultz.

Michael P. Chipko argued the cause for respondents Precision Billing LLC d/b/a Precision Billing Properties, LLC, and Kelly Langschultz (Wilson Elser Moskowitz Edelman & Dicker LLP, attorneys; Maxwell Leonard Billek, of counsel; Michael P. Chipko, of counsel and on the brief).

PER CURIAM

In this dispute between plaintiff Premier Health Center, P.C., a health care provider, and defendant Precision Billing LLC d/b/a Precision Billing & Consulting Services, LLC (Precision), plaintiff's former supplier of billing services,[1] plaintiff appeals from orders entered by the Law Division that dismissed plaintiff's complaint, imposed sanctions against plaintiff and granted defendant summary judgment on its counterclaim.[2] On appeal, plaintiff argues

---

[1] The other defendants, Precision Billing LLC d/b/a Precision Billing Properties, LLC (Precision Properties) and Kelly Langschultz, are respectively a related entity and a principal of Precision.

[2] The orders are a November 14, 2016 order denying plaintiff injunctive relief; a February 8, 2017 and July 6, 2017 order compelling and denying certain discovery; an October 6, 2017 order granting Precision's reconsideration of an earlier order; a February 2, 2018 order dismissing plaintiff's complaint with prejudice and imposing sanctions; a March 29, 2018 order denying plaintiff's motion for reconsideration of the February order; an August 3, 2018 order denying plaintiff's motion to dismiss defendant's counterclaim and compelling plaintiff to pay attorney's fees; a September 14, 2018 order granting defendant's motion for summary judgment on its counterclaim; and an October 26, 2018 order entering judgment against plaintiff, denying plaintiff's motion for a stay, and denying plaintiff's motion to reconsider.

that the motion judge should have denied summary judgment because Precision did not comply with Rule 4:46-2, failed to give adequate reasons for her decision, and improperly denied plaintiff's motions for discovery of electronically stored information (ESI).  It also argues that the motion judge had no basis to impose sanctions against plaintiff.  We find no merit to these contentions and affirm.

## I.

The facts derived from the record are summarized as follows.  Plaintiff provides chiropractic and other health care services to the public.  On April 7, 2007, plaintiff entered into a contract with Precision for it to provide plaintiff with "billing and collection services."  Under the agreement, plaintiff was to send patient information, including protected health information (PHI), to Precision, which "assumed the responsibility of safeguarding such confidential and sensitive information . . . and processing claims."  In exchange for its services, Precision was entitled to a six percent commission of plaintiff's net receivables, which it would not receive "until . . . plaintiff first receive[d] payment from an insurer or patient in response to . . . [Precision's] work."  Further, plaintiff was obligated to pay Precision within thirty days of receipt of Precision's invoice.  Each invoice included a provision stating a two percent fee,

3

calculated monthly that would apply if plaintiff failed to pay the invoice amount within thirty days.

The agreement also stated that both parties "shall maintain the confidentiality of each patient's medical records . . . [the parties'] enrollment information, and the confidential and proprietary information or trade secrets of . . . [the parties]." It also provided that plaintiff would have access to inspect and copy information "for the creation and maintaining, or processing of the PHI," and access to business records concerning the use and disclosure of such information.

The agreement also addressed termination. After either plaintiff or Precision terminated the agreement, for a period of ninety days, plaintiff would have continued access to the information on Precision's server in order to remove whatever it chose. During that time, Precision would continue to collect fees for its earlier collection efforts.

Thereafter, Precision provided services to plaintiff using Medisoft, a billing program, until January 19, 2014. In 2014, problems developed in the parties' relationship and plaintiff was no longer satisfied with Precision's performance. As a result, the parties agreed to terminate their contract on December 17, 2015. According to plaintiff's principal, Phillip Kim, plaintiff

terminated the agreement because it lost "thousands or even millions of dollars" due to Precision's failure to perform its obligations under the parties' agreement.

After the termination, Precision continued to provide services to plaintiff through August 2016.  Plaintiff contended that Precision did so in order to charge plaintiff for collected receivables, to which Precision was not entitled.  Precision stated it did so to allow plaintiff time to remove its information from the program, but it deactivated plaintiff from its system on August 24, 2016, as it was no longer collecting on the account.  Precision informed plaintiff that it owed $53,997.70 as plaintiff had not paid its invoices in over four months for services it rendered and, to Precision's knowledge, were based upon amounts plaintiff collected.

Instead of making payment, plaintiff filed its complaint.  The complaint alleged that Precision breached the agreement by failing to properly maintain records and submit insurance claims in a timely manner.  It also asserted that Precision committed fraud by "[i]ntentionally misrepresenting the status of thousands of insurance claims" and billing and receiving payment for payments that plaintiff never received.  Plaintiff also alleged that Precision was negligent, violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and intentionally spoliated evidence to misrepresent claim statuses and to

5

"perpetuat[e] [its] . . . foregoing fraudulent scheme." It sought judgment declaring that Precision's August 24, 2016 actions were unlawful and that it violated the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d to -9, by failing to comply with plaintiff's demands for copies of plaintiff's patient health and treatment/insurance records. Regarding spoliation, it requested an adverse inference, an order barring Precision from relying on or introducing at trial any information received from plaintiff, the appointment of a custodian for plaintiff's patient information, and permanent transfer of plaintiff's patient information to the custodian.

In response to the complaint, Precision filed an answer, denying the complaint's allegations, and asserting separate defenses. It also filed a counterclaim against plaintiff and a third-party complaint against Kim. In its pleading, Precision alleged that plaintiff breached the agreement by failing to make timely payments of amounts it was owed. It also alleged slander, libel, conversion, and unjust enrichment against Kim.[3]

---

[3] On December 19, 2016, a judge dismissed Precision's claims against Kim, finding that it failed to state a viable claim against him for relief and that discovery would not provide one.

A-0661-18T3

During the course of the ensuing litigation, two judges[4] entered numerous orders, including those under appeal, in response to the parties' various motions for injunctive relief, discovery, and ultimately the dismissal of the complaint and the entry of summary judgment in favor of Precision on its counterclaim, as well as imposing sanctions and counsel fees on plaintiff. This appeal followed.

II.

We begin our review by considering plaintiff's contention that we must reverse the September 14, 2018 award of summary judgment to Precision on its counterclaim and the October 26, 2018 order denying reconsideration, because Precision did not adhere to Rule 4:46-2's requirements and the judge issued an insufficient statement of reasons under Rule 1:7-4. According to plaintiff, Precision's "separate statement of material facts" was not a separate document, failed to make specific references to the record, and the motion judge improperly considered subsequent submissions by Precision before granting it summary judgment. As plaintiff argues, "[n]o matter how it is read or interpreted, Precision's . . . 'statement of material facts' show[ed] absolutely no 'citation' whatsoever—or any support, for that matter." We disagree.

---

[4] The first judge retired midway through the litigation and a second judge replaced him. As described herein, the second judge decided the dismissal motion and granted Precision summary judgment.

 A-0661-18T3

Rule 4:46-2(a) requires that a summary judgment motion be supported by the movant's "statement of material facts," "with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted." When a party opposes a material statement of facts, that party "may not rest upon the mere allegations or denials of the pleading, but must respond by affidavits . . . setting forth specific facts showing there is a genuine issue." R. 4:46-5(a). This "means a non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995). The opposing party must point to substantial facts, meaning that they are "not imaginary, unreal, or apparent only; [they must be] true, solid, real, . . . firmly based, a substantial argument." Ibid. (first quoting The Compact Oxford English Dictionary 1947 (2d ed. 1993); and then quoting The New Lexicon Webster's Dictionary of the English Language 987 (1987)). Compliance with the Rules for summary judgment procedures is "not optional." Lyons v. Township of Wayne, 185 N.J. 426, 435 (2005) (addressing a case in which a party failed to file any statement of undisputed material facts).

Here, Precision moved for summary judgment on August 14, 2018. Precision incorporated into its supporting brief a "statement of undisputed

8

material facts" that cited to the parties' agreement and invoices that were attached as exhibits to a certification filed with the statement by Precision's managing member and director, Langshultz. In its statement, Precision maintained that it provided plaintiff with all invoices for services rendered as per the parties' agreement. According to Langshultz, Precision was owed $117,353.11 under the agreement, including an assessment for late payments and for amounts owed from arbitration proceedings that Precision learned about through discovery, in which plaintiff recovered amounts pursued by Precision without ever paying Precision its share.[5]

On September 4, 2018, plaintiff filed its own statement of material facts in dispute and a certification from Kim challenging Precision's assertions. Plaintiff also maintained that Precision's statement of undisputed material facts did not comport with Rule 4:46-2 because it was not a separate document and it failed to include citations to the record. In response to plaintiff's argument, Precision submitted another statement of undisputed facts, identical to the initial one in its brief, as a separate document, and asserted that notwithstanding its

---

[5] The initial $53,997.70 that Precision claimed it was owed represented only missed payments by plaintiff during a four-month period. The $117,353.11 includes late fees and owed arbitration amounts, unknown to Precision when it initially contacted plaintiff about how much Precision was owed.

procedural error, plaintiff failed to meet its burden in opposition to summary judgment.

After considering the parties' oral arguments on September 14, 2018, the motion judge granted defendant's motion and entered judgment against plaintiff in the amount of $117,353.11. Regarding Precision's submission of an amended statement of undisputed facts, the judge found no procedural deficiency. She explained that the issues had been long known to the parties and found Kim's September certification "dismissive" of the court's orders and comprised solely of "allegations." She noted the motion was "essentially unopposed substantively" and observed that plaintiff did not obtain an expert to dispute any calculations. The judge observed that "[t]he clear and unambiguous language of the contract permits [Precision] to continue to collect on fees owed . . . after termination" and found no opposition that raised a substantial issue of material fact. On October 26, 2018, the judge entered an order denying plaintiff's motions for reconsideration and vacating the September 14, 2018 order.

Based on this record, we conclude that plaintiff's contentions about Precision's compliance with Rule 4:46-2 and the judge's compliance with Rule 1:7-4 are without merit. Here, defendant's statement of undisputed material facts contained citations to the agreement as well as citations to invoices for

services it performed that remained unpaid. Plaintiff, however, through its opposition, did not establish any material issue of fact as to Precision's entitlement under the agreement to those amounts. As the motion judge found, plaintiff "offer[ed] no analysis or evidence which supports [plaintiff's] claims," or that any calculations were wrong. Moreover, the judge's statement of reasons fully complied with <u>Rule</u> 1:7-4. <u>See</u> <u>R.</u> 1:7-4(a) (requiring a judge "by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon").

III.

We turn our attention to plaintiff's argument that the motion judge's failure or refusal to permit ESI discovery in this case unduly prejudiced plaintiff and constituted reversible error. We disagree.

The record here reflects that the parties made numerous discovery motions. In response to one of plaintiff's cross-motions to compel discovery, on February 8, 2017, the first judge entered an order requiring Precision to provide a current and final "[p]roblem [l]ist [c]harge/[p]ayment ([p]ending)" report from one of its billing programs, and to provide plaintiff with all unpaid invoices. On July 6, 2017, the same judge entered an order requiring Precision, within thirty days, to respond to plaintiff's discovery demands regarding unpaid invoices and

11

to produce a "current, final, or last" aging report from Medisoft. The judge noted that if Precision was not in possession of such report, it would not be under an obligation to create one. The same order required plaintiff to serve its responses to Precision's interrogatories and provide Precision with a list of all unpaid claims for which it was seeking damages. The list had to include claim numbers, patients' identities, dates of services, and the unpaid amount for each claim.

Thereafter, Precision moved for reconsideration of the July 6, 2017 order, which plaintiff opposed. Plaintiff also filed a cross-motion seeking an order dismissing Precision's counterclaim with prejudice, compelling Precision to respond to discovery requests, and barring Precision's collection of billing charges as it failed to comply with part of the July 6, 2017 order. On October 6, 2017, the motion judge granted Precision's motion for reconsideration of the July 6, 2017 order, and denied plaintiff's cross-motion.

On January 17, 2018, plaintiff filed a motion to compel discovery, specifically the production of Precision's electronically-stored Medisoft data. Plaintiff's counsel's certification included a claim that Precision continued to prevent plaintiff from accessing relevant ESI regarding its patients' data, depriving plaintiff of its right to all relevant discovery. On February 2, 2018, the motion judge found that plaintiff had continuously failed to comply with the

A-0661-18T3

July 6, 2017 order. Plaintiff had submitted a claims list, purporting to comply with the July 6, 2017 order, that contained over 16,000 claims. The motion judge then barred plaintiff "from issuing any further discovery proceedings in this matter."

On appeal, plaintiff argues that "the record is replete with Law Division orders that severely handicapped [its] case-in-chief." It contends that it was forced to comply with "unreasonable expectations" by having to prove its case early in discovery, which "placed insurmountable burdens" on plaintiff that contradicted the discovery rules. Plaintiff maintains that the ESI it provided was fully responsive to Precision's continued demands for claim-specific information, but it was blocked from engaging in any ESI discovery. Further, plaintiff argues that the judge prohibited it from pursuing third-party discovery through subpoenas. Plaintiff asserts that the dismissal of its complaint with prejudice was "very erroneous, given the circumstances." We find no merit to any of these arguments.

Our review of a trial judge's discovery rulings is limited. Bender v. Adelson, 187 N.J. 411, 428 (2006). We will "not . . . intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's

misunderstanding or misapplication of the law." Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017).

In our review, we are mindful of the fact that:

> The discovery rules were designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments rest upon real merits of the causes and not upon the skill and maneuvering of counsel. If the discovery rules are to be effective, courts must be prepared to impose appropriate sanctions for violations of the rules.
>
> [Abtrax Pharm., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 512 (1995) (citation omitted).]

We conclude that, contrary to plaintiff's contention, the judges did not abuse their discretion when they denied plaintiff's applications for discovery and enforced discovery orders entered against plaintiff. Plaintiff was not "handicapped" by the orders and was repeatedly asked to specify its claims against Precision. The record reflects that plaintiff repeatedly failed to comply with numerous orders.

Plaintiff never established it had any legitimate ESI discovery issues as plaintiff acknowledged that it had, in its possession, the ESI from Precision's programs. If there was any outstanding information, Precision provided the pertinent information as required by the judges' orders.

Given that plaintiff was provided numerous opportunities to comply with the orders for discovery, it was appropriate to dismiss plaintiff's complaint under Rule 4:23-2(b). The Rule provides that, if a party "fails to obey an order to provide or permit discovery," the court may make an order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the introduction of designated matters in evidence," R. 4:23-2(b)(2), or "striking out pleadings or parts thereof . . . or dismissing the action or proceeding or any part thereof with or without prejudice, or rendering a judgment by default against the disobedient party," R. 4:23-2(b)(3). We have no cause to disturb the judges' proper exercise of their discretion.

## IV.

Finally, we address plaintiff's argument that the sanctions imposed by the motion judge must be vacated because the judge abused her discretion. Here, too, we disagree.

The motion judge entered a protective order on January 26, 2017, based upon the fact that documents being sought in discovery contained patients' personal information that was protected by "federal and state laws governing the disclosure of such information." The order imposed an obligation on a party

15

who inadvertently received any documents deemed confidential or privileged to return the documents or destroy them.

Thereafter, Precision learned through information disclosed in discovery, that plaintiff had been contacting individuals and entities unrelated to plaintiff who had used Precision's services. Plaintiff advised these non-parties that Precision disclosed their PHI in violation of state and federal law.[6] According to plaintiff's counsel, he sent the letters because he was trying to obtain discovery he thought his client was entitled to but the motion judge would not allow. When the matter was brought to the judge's attention through plaintiff's filing a motion in aid of litigant's rights under Rule 1:10-3, she rejected counsel's excuses for the obvious violation of the protective order. On February 2, 2018,

---

[6] Plaintiff wrote to other health care providers who used Precision's services and stated the following:

> Attorneys for [Precision] have produced records identifying your patients and providing each individual's date of birth, social security number, and sensitive medical information. . . . In the event you are involved in any dispute with Precision . . . please contact our office as soon as possible. Otherwise, we recommend you or your attorneys investigate, as soon as possible, any unauthorized disclosure of patient protected health information and take appropriate measures to protect such confidential information.

the judge found plaintiff in violation of litigant's rights and on August 3, 2018, entered an order awarding attorney's fees and costs in the amount of $10,415.49. When plaintiff refused to make payment by October 2018, Precision moved for additional relief and on October 26, 2018, the motion judge reduced the award to a judgment against plaintiff in the amount of $10,415.49.

On appeal, plaintiff argues that the judge abused her discretion by entering the August 3, 2018 and the October 26, 2018 orders because there was no proof that plaintiff violated a protective order. Plaintiff maintains that the judge failed to take into consideration its several attempts to discuss Precision's discovery issues. Plaintiff further argues that the judge disregarded Precision's unreasonable failure or refusal to communicate with plaintiff about plaintiff's intentions to contact the non-parties about their health information. Plaintiff argues it reasonably interpreted Precision's silence and failure to object to plaintiff's contacting those third parties as Precision giving plaintiff permission to contact them.

We review a trial judge's imposition of sanctions against a litigant pursuant to Rule 1:10-3 for an abuse of discretion. Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011); see also Abtrax Pharm., Inc., 139 N.J. at 513. "An abuse of discretion 'arises when a decision is "made without a rational

explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Barr, 418 N.J. Super. at 46 (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). The decision to award attorney's fees and costs associated with an enforcement motion also "rests within the sound discretion of the trial court." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 459 (App. Div. 2018) (quoting Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003)). "[F]ee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995).

Rule 1:10-3 provides relief to a litigant for another party's failure to abide by a court order. Before relief can be granted, a judge must determine if the delinquent party willfully violated the alleged order. See In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 18 (2015); Schochet v. Schochet, 435 N.J. Super. 542, 548-49 (App. Div. 2014); Pressler & Verniero, Current N.J. Court Rules, cmt. 4.3 on R. 1:10-3 (2020) ("Before punitive or coercive relief can be afforded, the court must be satisfied that the party had the capacity to comply with the order and was willfully contumacious.").

Here, we conclude that the motion judge properly granted Precision relief under the Rule. Plaintiff's arguments to the contrary are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION