## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2254-19T2

DAVID H. PINCKNEY, a/k/a
DAVID HENRY PINKNEY,

     Plaintiff-Appellant,

v.

CATHERINE PINCKNEY,

     Defendant-Respondent.

_____

Submitted January 4, 2021 – Decided February 4, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0138-19.

David H. Pinckney, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

Plaintiff further appeals from the November 1, 2019 Family Part order entered following an ability to comply hearing, compelling his incarceration

until he paid $1000 of the $57,526 owed in support arrears, which payment was ultimately made to facilitate his release. For the reasons that follow, we affirm.

Parents charged with violating child support orders face arrest and potential incarceration to coerce compliance, subject to an ability to comply hearing conducted pursuant to Rule 1:10-3 to determine the parents' ability to pay their support obligations. Pasqua v. Council, 186 N.J. 127, 133 (2006). Rule 5:7-5(a) authorizes the Probation Department, which is responsible for monitoring and enforcing compliance with child support orders, to pursue enforcement actions in accordance with Rule 1:10-3 on the litigant's behalf.

"Those parents arrested on warrants for violating their support orders must be brought before a court as soon as possible, but, in any event, within seventy-two hours of their arrest." Pasqua, 186 N.J. at 153.

> Prior to the ability to pay hearing, the Probation Department elicits information from the obligor to complete a questionnaire that provides the court with relevant facts such as: the obligor's residence status; whether support is paid on another case; the number of dependents; whether the mortgage or rent payment is current; employment status and history; any reason for unemployment and the length of unemployment; other sources of income such as general assistance, disability, or workers compensation; whether the obligor has medical insurance; the obligor's monthly expenses for housing, loans, support obligations, medical insurance, household utilities, and other household expenses; the value of assets; and details of the obligor's total debts,

2

including loan balances, medical debts, debts owed to other courts, credit card balances, and civil judgments owed.

The trial court also addresses the obligor directly. [Administrative Office of the Courts (AOC) Directive #15-08] provides suggested inquiries to assist the court to clarify "inconsistent, inconclusive or ambiguous answers," determine why support has not been paid and how much the obligor can pay that day, and to ensure the obligor has a plan to address arrearages. Pursuant to [AOC Directive #02-14], the trial court is further required to make "specific factual findings regarding the obligor's ability to comply with the child support obligation" and, if coercive incarceration is ordered, the court's justification for ordering it.

[Schochet v. Schochet, 435 N.J. Super. 542, 547 (App. Div. 2014) (first quoting Administrative Directive # 15-08, "Enforcement of Child Support Orders-Use of Warrant and Incarceration" (November 17, 2018); then quoting Administrative Directive #02-14, "Probation/Family - Enforcement of Child Support- (1) Revised 'Orders for Relief to Litigant-Enforcement of Litigant Rights' and (2) Hearing to Determine Ability to Comply with Current Child Support Obligation" (April 14, 2014)).]

Additionally, "[a]t such hearings, courts must advise litigants in jeopardy of losing their freedom of their right to counsel and, if indigent, of their right to appointed counsel." Pasqua, 186 N.J. at 146.

Plaintiff, the obligor, and defendant, the obligee, have two children and have engaged in extensive motion practice regarding child support and related

A-2254-19T2

issues, including defendant's prior applications for coercive incarceration for plaintiff's non-payment of support. In plaintiff's prior appeal, we affirmed the entry of a child support judgment against plaintiff "in the amount of $51,028.89 as of July 2[], 2018" after plaintiff acknowledged that he was in arrears and "was 'an independent contractor,'" doing "'odd jobs,' including working as 'a security guard,' 'a substitute teacher,' and a 'Lyft' driver." Pinckney v. Dery, No. A-6003-17 (App. Div. May 28, 2020) (slip op. at 3).[1]

On October 25, 2019, plaintiff was notified that a bench warrant was issued for his arrest. Six days later, on October 31, 2019, plaintiff turned himself in to the Somerset County Sheriff's Department. The following day, on November 1, 2019, plaintiff appeared from the county jail via video conference before a Family Part judge for an ability to comply hearing. At the hearing, a probation officer testified under oath that a bench warrant was issued on October 24, 2019, for support arrears. The officer testified that plaintiff's child support obligation was $42 per week, plus $50 weekly for arrears. The officer explained that plaintiff's total arrears were $57,526.18, consisting of "spousal support arrears of $39,223.07" and "child support arrears [of] $18,303.11." The officer testified that plaintiff had made payments of $10 on August 16, 2019; $22 on

---

[1] Plaintiff represented himself in the trial court and on appeal.

September 3, 2019; $5 on October 16, 2019; and $5 on October 31, 2019. However, because plaintiff "[was] not meeting the full monthly obligation" and "ha[d] a two missed payment stipulation,"[2] the "warrant was issued." Additionally, plaintiff "had one prior warrant to date."

According to the officer, when plaintiff was asked whether there were any medical issues preventing his employment, plaintiff responded that "he ha[d] no medical issues" preventing him from working but "[did] not work" because his pay would be "garnish[ed] up to [sixty-five percent]." The officer stated that while plaintiff claimed "he [was] unemployed," he also indicated "on the interview sheet that he [made] $800 per month" without disclosing the source of the income.

When asked by the judge whether he disputed the officer's testimony, plaintiff responded that he did not. Plaintiff confirmed for the judge that he was "[fifty-eight] years of age," had "never been hospitalized," and was "in good physical condition." Plaintiff testified that he did "[o]dd jobs here and there whenever [he could]," such as "[u]sing [his] van to take people around" or

---

[2] Under Rule 5:7-5(a), "[u]pon the accumulation of a support arrearage equal to or in excess of the amount of support payable for [fourteen] days . . . , the Probation Division shall file a verified statement setting forth the facts establishing disobedience of the order or judgment" and "may then, on the litigant's behalf, apply to the court for relief in accordance with [Rule] 1:10-3."

"help[ing people move] and stuff like that."  Plaintiff also testified that he lived with his brother who only "ask[ed him] for $50 a week" in rent, but plaintiff wanted to pay $75 weekly.  Plaintiff stated further that he did not receive "food stamps" or any type of public assistance because he did not "believe in public assistance."

Plaintiff acknowledged that based on the current minimum wage, he could earn a minimum of $400 per week in an entry level position.  He also acknowledged that he had previously earned $90,000 annually,[3] but "was forced out of work" because "the court ha[d] taken between [sixty-five] and [ninety-nine] percent of [his] paycheck."  Plaintiff mused "[w]hat's the use of working[,]. . . if I worked for $400 a week, child support would've knocked me down to $100 a week.  I can't support myself [on that]."

Further, according to plaintiff, the $50 weekly arrears payment was imposed without a hearing and was a "textbook bill of attainder, which [was] illegal in the New Jersey and the U.S. constitution."  The judge dismissed plaintiff's contention out of hand, stating "[t]hat's not a bill of attainder.  And if

---

[3]  Plaintiff's child support obligation was originally established in a March 1, 2012 order in the amount of $198 weekly, "payable by income withholding from [plaintiff's] employer, Irvington Board of Education," where he earned "an annual [net] salary of $80,171 as a teacher."  Pinckney, slip op. at 1-2 n.1.

you feel that you're unable to pay the $50 a week toward arrears, it's incumbent upon you . . . to file a motion to modify the amount of your arrears payback."

Next, plaintiff pontificated that "New Jersey law" required "both parents . . . to pay child support, but . . . does not specify an amount." Therefore, plaintiff believed he was "in compliance with New Jersey law" because he was "making payments" he could afford when he could afford to make them. In any event, plaintiff asserted that the enforcement hearing could not proceed because he had filed an appeal challenging "this ridiculous[ly] high child support" and his request for a stay of enforcement proceedings was pending.

The judge promptly responded:

> Assuming for the sake of discussion that there is an active appeal that is before the Appellate Division, unless and until there's . . . an order of stay entered by the Appellate Division preventing enforcement of a child support and/or spousal support obligation at the trial level then [the] trial court . . . may proceed in the manner in which Probation is proceeding at this time.

See Kiernan v. Kiernan, 355 N.J. Super. 89, 91 (App. Div. 2002) ("[Rule 2:9-1(a)] contemplates jurisdiction in the trial courts after an appeal is filed for enforcement of orders and judgments or other actions that are specifically authorized.").

A-2254-19T2

The judge then determined "that given the fact that [plaintiff was] able-bodied, [has] never been in a hospital, [is fifty-eight years old], and . . . at least able to earn minimum wage" there was "no basis for [plaintiff] not to be paying, in essence, $92 a week." In that regard, the judge made the following findings:

> I do not find you to be indigent. I do not find it necessary, nor appropriate, nor constitutionally required, State or federal, for an attorney to be appointed to represent you under the facts and circumstances of this case. You do have the ability to comply and pay.
>
> You are in excellent physical and mental health, never being hospitalized at any time in [fifty-eight] years. And minimum wage is $10 an hour if you're working above the table and whatever you're earning below the table with regard to your . . . odd jobs and those circumstances.
>
> Your rent obligation is, about, $50, although you'd like to pay $75 a week to your brother. You have a subsidized housing situation. And, . . . you're in a position financially where you can afford to pay $92 per week despite the fact that you owe $57,000 plus in arrears.
>
> So, I'm going to follow the recommendation of [the probation officer]. I'm going to place a release amount of $1,000 on this matter. In the event you're not able . . . to make that amount, there will be an automatic review within [fourteen] days.

A-2254-19T2

The judge entered a memorializing order on November 1, 2019, indicating that plaintiff had "the ability to work and make payments" but "willfully refuse[d] to do so," requiring incarceration "to coerce compliance."  This appeal followed.

On appeal, defendant raises the following points for our consideration:

> ARGUMENT 1
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW IN PROCEEDING IN ANY MANNER SINCE THE SUPERIOR COURT OF NEW JERSEY, FAMILY DIVISION, SOMERSET VICINAGE . . . DID NOT INFORM THE APPELLANT . . . THE REASON HE WAS BEING INCARCERATED PRIOR TO BEING ARRESTED.
>
> ARGUMENT 2
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW IN PROCEEDING IN ANY MANNER SINCE THE SUPERIOR COURT OF NEW JERSEY, FAMILY DIVISION, SOMERSET VICINAGE . . . CUT OFF THE UNEMPLOYED APPELLANT . . . FROM SECURING AN ATTORNEY BEFORE THE HEARING DURING THE HEARING.
>
> ARGUMENT 3
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW IN PROCEEDING IN ANY MANNER SINCE THE SUPERIOR COURT OF NEW JERSEY, FAMILY DIVISION, SOMERSET VICINAGE . . . DID NOT VERIFY IF THE APPELLANT . . . WAS SUBJECTED TO A CHILD SUPPORT PAYMENT STIPULATION JUSTIFYING A WARRANT FOR HIS ARREST.

9

ARGUMENT 4

THE TRIAL COURT ERRED AS A MATTER OF LAW IN PROCEEDING IN ANY MANNER SINCE THE SUPERIOR COURT OF NEW JERSEY, FAMILY DIVISION, SOMERSET VICINAGE . . . DELIBERATELY APPLIED A 'FAILURE TO PAY CHILD SUPPORT' PUNISHMENT WHEN THE RECORD INDICATES THAT THE APPELLANT WAS ACTUALLY PAYING CHILD SUPPORT.

ARGUMENT 5

THE TRIAL COURT ERRED AS A MATTER OF LAW IN PROCEEDING IN ANY MANNER SINCE THE SUPERIOR COURT OF NEW JERSEY, FAMILY DIVISION, SOMERSET VICINAGE . . . DID NOT SEND ME, THE PAYOR, A COPY OF THE 'ABILITY TO COMPLY' MOTION BY CERTIFIED MAIL.

Considering the fact that defendant is no longer incarcerated, the issues raised in this appeal would appear to be moot. See Greenfield v. N.J. Dep't of Corrs., 382 N.J. Super. 254, 257-58 (App. Div. 2006) ("An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy.") (citation omitted); Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) ("Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm.").

A-2254-19T2

Assuming the issues are not moot, based on our review of the record and the governing legal principles, we reject defendant's contentions that, in essence, the enforcement hearing was procedurally or substantively deficient. "The Rule 1:10-3 hearing is not a plenary hearing to decide the appropriate amount of support an obligor [should] pay. That amount has been determined, either by the court following a trial or post-judgment motion, or by the parties themselves." Schochet, 435 N.J. Super. at 548. "The hearing is also not a substitute for an appeal or a motion to modify the obligation based on changed circumstances." Ibid. Likewise, "[i]t does not establish the future obligation of the party paying support." Ibid.

"The hearing comes about because an obligor has failed to comply with an order." Ibid. "The objective of the hearing is simply to determine whether that failure was excusable or willful, i.e., the obligor was able to pay and did not." Ibid. (citing Pasqua, 186 N.J. at 145). Thus, "[b]efore a court may order the ultimate coercive means, incarceration, 'the court must find that the parent was capable of providing the required support, but willfully refused to do so.'" Id. at 549 (quoting Pasqua, 186 N.J. at 141 n.2). "If the court should determine that the obligor paid what he or she was able to pay, no incarceration would be warranted despite the accrual of arrears . . . ." Id. at 550.

"The issue to be decided at an ability to comply hearing closely parallels determinations Family Part judges make on a daily basis concerning the evaluation of financial information provided through documents and testimony." Ibid. "That experience gives rise to the well-established deference paid to factual findings Family Part judges make that are supported by the evidence, deference that 'is especially appropriate "when the evidence is largely testimonial and involves questions of credibility."'" Id. at 551 (quoting MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007)). "In particular, Family Part judges are well versed in reviewing the good faith of litigants who fail to meet their obligations in the full spectrum of post-judgment litigation." Ibid.

Here, contrary to plaintiff's assertions, many of which are belied by the record, plaintiff was afforded all the procedural protections he was due, and we are satisfied that the proceedings complied with the dictates of Pasqua and its progeny. Further, the judge carefully examined the facts and circumstances and made thorough findings that are supported by the record. There is insufficient merit in plaintiff's arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2254-19T2