**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0603-20

D.K.,[1]

    Plaintiff-Appellant,

v.

B.K.,

    Defendant-Respondent.

_____

Argued December 13, 2021 – Decided January 7, 2022

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1243-18.

Eliana T. Baer argued the cause for appellant (Fox Rothschild, LLP, attorneys; Eliana T. Baer, of counsel and on the briefs).

Allison P. Berecz argued the cause for respondent (Skoloff & Wolfe, PC, attorneys; Allison P. Berecz, on the brief).

---

[1] We use initials to identify the parties to protect and preserve the confidentiality of these proceedings.

PER CURIAM

In this post-judgment matrimonial matter, plaintiff D.K. appeals from a September 25, 2020 Family Part order denying his motion for an interim reduction in his limited duration alimony (LDA) payments and child support obligations based on the loss of his employment on Broadway due to the COVID-19 pandemic. The judge found plaintiff had not demonstrated a substantial change of circumstances and acted in bad faith, resulting in a $3,000 counsel fee award to defendant. Plaintiff also appeals from the judge's January 4, 2021 order granting defendant B.K.'s notice of cross-motion appointing a parent coordinator (PC) with authority to make final decisions on issues unrelated to parenting. For the reasons that follow, we affirm in part, and vacate, reverse, and remand in part.

I.

The following facts are derived from the record. The parties were married in October 2004. They have three children born in 2010, 2011, and 2014. The parties divorced in April 2018. A marital settlement agreement (MSA) was negotiated by the parties, who were both self-represented at the time, and reduced to a writing by their mediator, who is an attorney. The MSA was incorporated into the judgment of divorce (JOD). In pertinent part, the MSA

2

provides for alimony and child support to be paid by plaintiff to defendant as follows:

> Based upon the parenting time schedule set forth above, alimony paid from [plaintiff] to [defendant] as set forth below and the respective incomes of the parties, [plaintiff] shall pay child support to [defendant] during his alimony term as follows: $1,833.33 per month in year one (1); $1,000.00 per month for years two (2) through four (4); $1,150.00 per month for years five (5) through seven (7) and $1,300.00 per month in year eight (8). At the end of the eight (8) year term, or upon the termination of alimony, whichever first occurs, child support shall be [thirty percent] of [plaintiff]'s gross income, regardless of [defendant]'s income. [Plaintiff]'s [thirty percent] obligation is comprised of [ten percent] of his gross income per child. Therefore, [plaintiff]'s child support obligation shall decrease by [ten percent] with the emancipation of each child. . . . Additionally, in years one (1) through eight (8), [plaintiff] shall pay additional child support in the event that he earns a gross reportable income from any source over $78,000.00 . . . .

The MSA further provides "[t]he parties agree that the child support numbers set forth above and the percentage formula set forth above to be paid upon the termination of alimony shall be non-modifiable."

Regarding alimony, the MSA provides:

> [Plaintiff] is employed full-time and earns an income of approximately $78,889.64 per year. [Defendant] is employed part-time and earns an income of approximately $4,368.45 per year. Based upon the parties' respective incomes, [they] agree that [plaintiff]

3

shall pay [LDA] to [defendant] for a term of eight (8) years. Alimony shall commence on March 1, 2018. For the first year, [plaintiff] shall pay alimony in the amount of $25,000.00; for the second year, [plaintiff] shall pay alimony in the amount of $30,000.00; in years three (3) and four (4), [plaintiff] shall [pay] alimony in the amount of $25,000.00 per year; in years five (5) through seven (7) [plaintiff] shall pay alimony in the amount of $20,000.00 per year; and in year eight (8) [plaintiff] shall pay alimony in the amount of $15,000.00 per year.

Alimony is modifiable "[i]n the event that there is a change in the IRS Tax Code which prevents th[e] deduction" of alimony from plaintiff's taxable income, which the MSA stated "shall constitute a significant change of circumstances warranting a review of [plaintiff]'s alimony obligation." While there also exists a provision for a reduction of alimony of twenty-five percent in the event that defendant "simultaneously earns a gross income in the amount of $75,000.00 or above and in the [event] [plaintiff] earns a gross income in the amount of $65,000.00 or below," alimony is agreed to be non-modifiable. Specifically, the MSA states as follows:

> The parties hereto acknowledge and agree that the terms of the [MSA] and the payments as set forth herein are in full and complete satisfaction of all claims for support, maintenance and/or alimony that one may have against the other. The parties agree and intend that the terms of this [MSA] as the same relate to alimony shall be final. The parties have envisioned and considered any and all foreseeable events occurring to either of

them. The parties have specifically considered increases or decreases in the cost of living, increase or decreases in their respective incomes, their loss of or inability to secure employment, any potential disability of either party, any prospective change of employment, the subsequent acquisition or loss of assets by either of them, the dissipation (whether negligent or not) of the assets received by each of them as and for equitable distribution in this matter, and any other event or events which may or do change the quality of their separate economic lives. The parties understand the holdings in the case[s] of <u>Lepis v. Lepis</u>, 83 N.J. 139 (1980), <u>Crews v. Crews</u>, 164 N.J. 11 (2000), relative to modification of support provisions based on changes in circumstances, and lifestyle, and notwithstanding same, each party hereby waives any right to seek a modification of the alimony terms in the future, except as specifically set forth in paragraphs 3.2 and 3.3 above. <u>Having considered all of the foregoing, the parties agree that the alimony set forth herein shall be non-modifiable under any circumstances for any reason, except as specifically set forth in paragraphs 3.2 and 3.3 above</u>.

[(emphasis added).]

Between April of 2003 until March of 2020, plaintiff worked as the associate director of a Broadway production company, which engaged in live theatrical entertainment. Plaintiff has over twenty years of experience working in the theater industry. Toward the end of his employment at the organization, plaintiff earned approximately $78,000 annually, "which included ancillary income from projects related to his position." According to defendant, before

5

the pandemic closed Broadway, plaintiff learned in July 2019, eight months prior to Broadway's COVID-19 closure, that his employment was coming to an end because the individual he worked for passed away. However, plaintiff claims he was laid off by the organization on March 16, 2020, due to the COVID-19 outbreak because live theatrical performances had closed. No reopening date was set at that time. Plaintiff supplemented his income by directing other "projects globally as an independent theater director," and teaching "as an [a]djunct [p]rofessor of [t]heater" at a nearby university on Saturdays.

Plaintiff asserts that, following his lay-off, his income subsisted solely "of $504 per week in New York State [u]nemployment, together with an additional $600 per week via the CARES Act through July 26, 2020." On July 2, 2020, plaintiff filed a notice of motion seeking modification and relief from his alimony and child support obligations; modification of parenting time; finding defendant in violation of paragraph 9.3 of the MSA, which requires the parties to mediate their disputes; production of the children's birth certificates; prevention of parental alienation by defendant; and counsel fees. In support of his motion, plaintiff submitted a case information statement (CIS), which

revealed his monthly budget for schedule A, B, and C expenses, including his then monthly alimony and child support obligation of $3,983, totaled $7,101.

On August 6, 2020, defendant filed a notice of cross-motion seeking to deny plaintiff's motion; for the appointment of a PC to address the parties' disputes regarding the children; the right to enroll the children in extracurricular activities, monetary contribution, and transportation sharing for same; prohibiting either party from deducting expenses from alimony and child support obligations and reimbursements; exchange of income tax information; production of plaintiff's contracts concerning royalties and other rights; modification of the MSA to preclude mediation; counsel fees; and other monetary relief.

Defendant asserted that plaintiff failed to look for another job between March 2020 and the date he filed his motion in July 2020. She also claims plaintiff has "unclean hands" because he unilaterally reduced his support payments in March 2020. In addition, defendant averred that plaintiff failed to pay alimony and child support beyond the threshold level of income set forth in the MSA, failed to pay certain agreed upon expenses, and did not report income "with the specific purpose of reducing his support obligations." In his reply

7

certification, plaintiff submitted twenty-two job applications, fifteen of which were sent out to prospective employers after he filed his motion.

On September 4, 2020, the judge heard oral argument via Zoom. Plaintiff was self-represented, and defendant was represented by counsel. During the hearing, plaintiff admitted he was "working on a Broadway show right now. . . . about adapting a documentary into a Broadway show." The judge analyzed the motions and rendered a comprehensive oral opinion that day. In her decision, the judge noted, "while [the] [COVID-19 pandemic] might not have been a foreseeable event in the grand scheme of the future, unemployment and losing your job . . . was. Because [the MSA] specifically says you've considered increases and decreases in the cost of living . . . loss or inability to—secure employment."

Since the MSA had specifically provided for the non-modification of alimony and child support, and in light of the anti-Lepis provision, the judge found plaintiff had "freely, knowing, and voluntarily" entered into the MSA, therefore, the MSA governed and there would be no modification or alteration of the alimony portion of the agreement. And, the judge stressed it was not improper for defendant to "refuse" to mediate any change to the non-modifiable support term.

A-0603-20

The judge also determined that plaintiff had not "proven a change in circumstances" based on "the totality of the circumstances." Despite plaintiff's current unemployed status, the judge found he was "voluntarily unemployed" as "there is work out there, obviously not on Broadway, but there is work out there." The judge found plaintiff was in violation of litigant's rights for reducing his support payments and "hold[ing] them hostage." In addition, the judge found plaintiff had "substantial assets—assets that are sufficient to support [plaintiff] and continue [his] support obligations" and commented plaintiff's CIS was not "realistic based on . . . the totality of the circumstances." Finding the MSA comprehensive and well negotiated, the judge ordered "the use of a [PC] for all issues separate and apart from child support and alimony because those are non-modifiable."

As to the issue of counsel fees, the judge concluded plaintiff had not "acted in good faith because the order is the order, the [JOD] and the MSA that's in it clearly and very specifically set out . . . if someone was unemployed." Plaintiff's reticence to pay his agreed upon alimony and child support obligations compelled defendant to file a cross-motion, which the judge found merited an award of counsel fees in the sum of $3,000 based upon plaintiff's bad faith. A memorializing order was entered on September 20, 2020. On October

9

14, 2020, a corrected order was entered to fix typographical errors and included "one or two substantive changes."[2] A supplemental order was entered on January 4, 2021, appointing the PC. This appeal ensued.

On appeal, plaintiff argues: (1) the judge erred in failing to modify or suspend his alimony and child support obligations due to the unforeseen change in circumstances related to the COVID-19 pandemic in light of the loss of his entire industry; (2) the judge failed to consider a modification of child support based on both parties' changed circumstances; (3) the judge incorrectly considered assets previously divided between the parties as a source of plaintiff's ability to continue paying support; (4) the judge abdicated her judicial responsibility in binding the parties to the PC's recommendations on remaining issues not decided by the court, such as parenting time and financial relief; and (5) the judge abused her discretion in finding bad faith and awarding counsel fees to defendant. In the event we do not reverse on appeal, plaintiff also seeks a remand to a different judge.

II.

Review of a trial judge's findings, particularly in the Family Part, is of limited scope. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Because of the

---

[2] The October 14, 2020 order is not included in either party's appendix.

family courts' special jurisdiction and expertise in family matters, appellate [review] should accord deference to family court factfinding." Id. at 413. Therefore, we should not "'engage in an independent assessment of the evidence as if [we] were the court of first instance.'" N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

A trial judge's fact findings should not be overturned unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). Legal conclusions, however, are not due "that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." Z.P.R., 351 N.J. Super. at 434.

We acknowledge that "[s]ettlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). Thus, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999) (quoting Smith v. Smith, 72 N.J. 350,

11

358 (1977)).  Settlement agreements are "governed by basic contract principles." Quinn, 225 N.J. at 45 (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)).  It is a well-settled principle that "[i]t is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear."  Ibid. (citing J.B., 215 N.J. at 326).  Therefore, "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result."  Ibid.

Notably, "the law grants particular leniency to agreements made in the domestic arena" and allows "judges greater discretion when interpreting such agreements."  Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)).  An exception exists to the general enforcement of settlement agreements that have the requisite intent to form when there is "unconscionability, fraud, or overreaching in the negotiations of the settlement."  Miller v. Miller, 160 N.J. 408, 419 (1999). Specifically, our Supreme Court has noted "[a]greements between separated spouses executed voluntarily and understandingly for the purpose of settling the issue of [alimony and child support] are specifically enforceable, but only to the extent that they are just and equitable."  Quinn, 225 N.J. at 48-49 (alteration in original) (quoting Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970)).

A-0603-20

"[A]limony and support orders define only the present obligations of the former spouses.  Those duties are always subject to review and modification on a showing of 'changed circumstances.'"  Lepis, 83 N.J. at 146; see N.J.S.A. 2A:34-23.  They are also subject to enforcement of valid anti-Lepis provisions where "the parties . . . with full knowledge of all present and reasonably foreseeable future circumstances bargain for a fixed payment or establish the criteria for payment to the dependent spouse, irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement." Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993).

A determination of whether there is a changed circumstance "turn[s] on the discretionary determinations of Family Part judges, based upon their experience as applied to all the relevant circumstances presented, which [the Appellate Division] do[es] not disturb absent an abuse of discretion."  Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006).  Changed circumstances may "include an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law." J.B., 215 N.J. at 327 (citing Lepis, 83 N.J. at 151-52).

13

A-0603-20

Dispositive criteria "[i]n deciding whether to modify an agreement due to changed circumstances . . . 'are whether the change in circumstance is continuing and whether the agreement or decree has made explicit provision for the change.'" Quinn, 225 N.J. at 49 (quoting Lepis, 83 N.J. at 152). "Temporary circumstances are an insufficient basis for modification." Innes v. Innes, 117 N.J 496, 504 (1990) (citing Bonanno v. Bonanno, 4 N.J. 268, 275 (1950) (holding temporary unemployment insufficient for modification)).

Plaintiff failed to make a prima facie showing of a substantial change in circumstances. The record shows plaintiff lost his job because the individual he assisted for seventeen years passed away in July 2019, eight months prior to the COVID-19 pandemic. We are convinced that plaintiff intentionally chose not to seek other employment. More critically, plaintiff did not submit any evidence of his efforts to seek other employment when he filed his July 2, 2020 motion, with the exception of three job applications between October 2019 through January 2020, which was well before the pandemic led to Broadway closing.

We reject plaintiff's argument that he established a change of circumstances due to loss of his employment because of the COVID-19 pandemic. While plaintiff contends the "pandemic constituted an extreme and unforeseeable change in circumstances," he has failed to present facts

14

establishing how long there would be a delay in his unemployment and whether that temporary delay will cause a prolonged substantial change in his economic circumstances.

Moreover, plaintiff presented scant evidence of his efforts to mitigate his loss of employment during the pandemic and seek other work, whether in his field of experience or not. Accordingly, it would not be equitable to the children or defendant to make a change in support obligations when plaintiff has not made the required showing. Donnelly v. Donnelly, 405 N.J. Super. 117, 128 (App. Div. 2009) (citing Larbig, 384 N.J. Super. at 23) (explaining that the determination of whether there has been a change of circumstances long enough to warrant modification is committed to the Family Part's discretion). Defendant's mortgage forbearance, which only temporarily reduced her need for full support payments, does not change our analysis.[3]

We also reject plaintiff's argument that the judge should have fashioned a temporary order using her authority under N.J.S.A. 2A:34-23. Section N.J.S.A. 2A:34-23(k) permits temporary reductions in alimony payments, not child support obligations. While the Family Part has authority in certain

---

[3] Defendant's counsel represented at oral argument that her client's mortgage payments have resumed.

circumstances to temporarily reduce a child support obligation, see Kuron v. Hamilton, 331 N.J. Super. 561, 576 (App. Div. 2000), that authority is committed to the sound discretion of the Family Part, J.B., 215 N.J. at 325-26 (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). We conclude the judge's decision was based upon substantial credible evidence in the record and was not an abuse of discretion.

In his brief, plaintiff argues the anti-Lepis provision of the parties' MSA is unenforceable because both parties were self-represented at the time, and there was "no evidence of any consideration for the blanket non-modifiability of [plaintiff's] obligations." At oral argument, however, plaintiff's counsel advised that plaintiff is not seeking reformation of the MSA or the anti-Lepis provision. Therefore, we see no need to address the merits of the anti-Lepis provision. We stress that the anti-Lepis clause under review anticipated plaintiff's "loss of or inability to secure employment" regardless of the reason.

Notwithstanding the validity of the anti-Lepis clause of the MSA, as we noted in Morris, finding that the parties intended their MSA not be subject to modification for changed circumstances does not end the inquiry. 263 N.J. Super. at 244. The Family Part judge "has both the power and duty to establish

16

a reasonable level of current payment based upon [a party]'s income, assets, and reasonable resort to credit." Ibid.

The Morris court noted the blatant inequity of not enforcing an agreement in which the parties expressly "provided for defendant's future decreased ability to pay"—"[i]f defendant's income increased, he could hold plaintiff to her agreement; if it decreased, he inequitably could claim an inability to pay and avoid his debt to her." Id. at 242, 244. Defendant was required to pay the agreed upon alimony if he had the means to do so, and, if not, the unpaid balance would accrue until his fortunes improved. Id. at 244. If defendant's financial situation did not improve and his arrearages accumulated, then that would be the result he bargained for when plaintiff gave up her Tevis[4] claim and her potential equitable distribution claim in respect of his produce business.

As explained in Morris, "[t]here is no great inequity" because "each party has the expected benefit and burden of the contract." Ibid. The motion judge "has both the power and duty to establish a reasonable level of current payment based upon defendant's income, assets, and reasonable resort to credit." Ibid.; N.J.S.A. 2A:34-23. Here, plaintiff did not request an ability-to-pay hearing but merely an abatement of his support obligations until he became re-employed.

---

[4] Tevis v. Tevis, 79 N.J. 422 (1979).

In any event, based upon the record before us, we find that plaintiff has not established a prima facie showing of changed circumstances. See Hand v. Hand, 391 N.J. Super. 102, 106 (App. Div. 2007). Therefore, no ability-to-pay hearing was warranted. See Schochet v. Schochet, 435 N.J. Super. 542, 548 (App. Div. 2014). Plaintiff's motion to suspend his alimony and child support payments due to the COVID-19 pandemic was properly denied.

## III.

Plaintiff argues the judge erred by finding his assets, all of which were previously negotiated as part of equitable distribution, could be used to fund his support obligations. He further contends his assets emanated from the divorce and are "essential" to his estate planning goals. Plaintiff relies on Innes, where our Court discussed N.J.S.A. 2A:34-23, which states, "[w]hen a share of a retirement benefit is treated as an asset for purposes of equitable distribution, . . . court[s] shall not consider income generated thereafter by that share for purposes of determining alimony." 117 N.J. at 505 (emphasis added) (quoting N.J.S.A. 2A:34-23(b)).

The Court held "[t]he plain language of the [statute] provides . . . income from pension benefits that have been treated as an asset for equitable distribution purposes (those benefits reflecting work during the marriage partnership) is not

A-0603-20

to be considered in <u>determining alimony</u>." <u>Ibid.</u> (emphasis added). The Court further noted the statute embodied a legislative determination that "it is inappropriate to make equitable distribution of a retirement benefit and then consider that distributed share for purposes of determining alimony" because "'double-dipping' of this asset . . . [is] improper." <u>Id.</u> at 514.

The language from N.J.S.A. 2A:34-23 the Court interpreted in <u>Innes</u> has no application here. The provision in N.J.S.A. 2A:34-23 cited by the Court in <u>Innes</u> prohibits consideration of the income generated from a retirement benefit that was treated as an asset for purposes of equitable distribution only in the determination of alimony. N.J.S.A. 2A:34-23(b). In her September 25 and October 14, 2020 orders, the judge did not determine alimony; she directed plaintiff to pay alimony (and child support) as required by the parties' MSA. We reject plaintiff's argument that his assets obtained by way of equitable distribution "are exempt from consideration" vis-à-vis his ability to pay even if his assets have decreased in value.

IV.

Plaintiff also contends the judge's decision to allow a PC "to make [binding] determinations outside of day-to-day parenting disputes abdicated the trial court of its proper role as decision-maker." Plaintiff argues the PC has no

19

authority to attempt to reach resolution on such issues as "claimed expenses."

On this point, we agree with plaintiff.

On March 5, 2007, our Supreme Court adopted a Pilot Program for Parenting Coordinators to be implemented in Bergen, Morris/Sussex, Middlesex, and Union counties. See Notice to the Bar: Parenting Coordinator Pilot Program, 188 N.J.L.J. 169 (Apr. 9, 2007), available at https://www.njcourts.gov/notices/2007/n070403a.pdf. The notice described a PC as "a qualified neutral person appointed by the court, or agreed to by the parties, to facilitate the resolution of day[-]to[-]day parenting issues that frequently arise within the context of family life when parents are separated." Ibid. The goal of appointing PCs, as stated in the notice, is:

> [T]o aid parties in monitoring the existing parenting plan, reducing misunderstandings, clarifying priorities, exploring possibilities for compromise and developing methods of communication that promote collaboration in parenting. The [PC]'s role is to facilitate decision making between the parties or make such recommendations, as may be appropriate, when the parties are unable to do so. One primary goal of the [PC] is to empower parents to develop and utilize effective parenting skills so that they can resume the parenting and decision[-]making role without the need for outside intervention.
>
> [Ibid.]

A-0603-20

Four years later, in November of 2012, the pilot program concluded with the rescission of "[a]ll standardized forms promulgated in connection with [the] pilot program" as of November 26, 2012. See Notice to the Bar: [PC's] - Conclusion of Pilot Program: Continuing Authority to Appoint in Individual Cases, 210 N.J.L.J. 854 (Dec. 3, 2012), available at https://www.njcourts.gov/notices/2012/n121126a.pdf. Notably, while the pilot program ended, Family Part judges were still allowed authorized to "continue to appoint [PCs] in specific cases in any vicinage." Ibid. If appointed, the PCs are required "to be qualified to serve either by consent of the parties or by the court in the same manner as other experts." Ibid. While there were no express requirements for forms, two model forms were attached to the notice. Simply stated, "[t]he use of a PC is designed to aid parents by providing a different forum to discuss parenting problems." Milne v Goldenberg, 428 N.J. Super. 184, 205 (App Div. 2012).

Since then, our courts have still held to the principles derived during the period of the pilot program. One such principle is "court review of . . . alleged violations of prior orders is not obviated by the parties' agreement to utilize a [PC]." Parish v. Parish, 412 N.J. Super. 39, 60 (App. Div. 2010) (cited again after remand in Parish v. Kluger, No. A-0485-14 (App. Div. March 17, 2016)

21

(slip op. at 3)).  Subjects not appropriate for deferral to PC include "[e]nforcement of the parenting time provisions of the FJOD," as "enforcement of orders rests with the courts and falls outside the sphere of the [PC]'s authority to aid in the implementation of a parenting time plan." Id. at 53.

Specifically, the Parish court stated:

> We recognize matrimonial matters are susceptible to multiple motion filings, each met by a cross-motion, centering on similar general themes of enforcement of custody or support orders.  Further, we are mindful of the great expense of time, money, and emotion associated with family court motion practice and the constant demands for intervention placed upon our Family Part judges.  However, even repetitive motions for enforcement, when premised upon a demonstration of a party's failure to comply with court orders, cannot be automatically deemed a burden on the judicial process and deferred to a [PC].
>
> [Ibid. (basing its conclusion of error on the trial court's sole determination of "a possibility" of "frivolous litigation.").]

Clearly, our courts are not in favor of a Family Part judge delegating tasks to a PC that are more appropriately suited for disposition in a courtroom. Ibid.; see also Milne, 428 N.J. Super. at 205.  ("The use of a PC is designed to aid parents by providing a different forum to discuss parenting problems.  The use of a PC[, however,] may not [be] substitute[d] for a judge's determination in contested parenting issues . . . .")  The concern evinced by Parish regards

22                                                           A-0603-20

"restraints on litigation" that would prevent parties from having their disputes heard by a judge. Parish, 412 N.J. Super. at 54.

The record is replete with examples of the parties' animosity for one another and their inability to work together for the good of their children. An attempt at mediation, as provided in their MSA, paragraph 9.3, to agree "to resolve certain issues . . . prior to filing a court application" failed. The judge was well within her discretion to appoint a PC here but erred in ceding authority to the PC to make binding decisions on issues unrelated to parenting time. Therefore, we vacate and reverse the January 4, 2021 order and remand to the Family Part judge for entry of a new PC order consistent with our opinion herein.

V.

We next address plaintiff's argument that defendant was not entitled to an award of counsel fees because the record "is deficient of any showing of 'bad faith,'" and the judge failed to engage in the requisite analysis. We disagree.

We review a trial court's order concerning attorneys' fees under an abuse of discretion standard. Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). N.J.S.A. 2A:34-23 authorizes family courts to award counsel fees in a matrimonial action and further requires the judge "consider the factors set forth in the court rule on

counsel fees, the financial circumstances of the parties, and the good or bad faith of either party."  Mani v. Mani, 183 N.J. 70, 93-94 (2005) (quoting N.J.S.A. 2A:34-23).  Likewise, an order granting a motion to enforce litigant's rights is reviewed under an abuse of discretion standard.  See N. Jersey Media Grp., Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 296, 299-300 (App. Div. 2017).

Rule 5:3-5(c) states that a court should consider nine factors, including the "reasonableness and good faith of the positions advanced by the parties." Rule 5:3-5(c) also provides the judge:

> [S]hould consider, in addition to the information required to be submitted pursuant to R[ule] 4:42-9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

Following a recitation of the factors under Rule 5:3-5(c), the judge determined:

> [Plaintiff] is in a better financial position just based on the documents, based on the totality of the factors, than

24

[defendant]. And the reasonableness or good faith of the position . . . I do not believe [plaintiff] has acted in good faith because the order is the order, the [JOD] and the MSA that's in it clearly and very specifically set out very specific if someone was unemployed. And I don't find that that was in good faith.

The extent of the fees incurred, there [plaintiff] didn't have any fees incurred because he acted as self-represented. And I do find therefore – there were other issues that needed to be addressed. Clearly there were a lot of issues that were amenable for mediation which didn't get addressed . . . .

. . . .

. . . [T]herefore[,] I am going to award counsel fees based on the totality of the factors in the amount of $3,000.

Here, the judge referenced the factors enumerated in the court rules and found those factors supported an award of counsel fees. She concluded plaintiff acted in bad faith. We discern no abuse of discretion in the judge's determination. Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002) (citing Yueh v. Yueh, 329 N.J. Super. 447, 450 (App. Div. 2000)).

"[B]ad faith for counsel fee purposes relates only to the conduct of the litigation . . . ." Mani, 183 N.J. at 95. The purposes of an award of counsel fees in an instance of bad faith "is to protect the innocent party from unnecessary costs and to punish the guilty party." Yueh, 329 N.J. Super. at 461.

25

Here, the judge made her determination of an award of counsel fees based not only on a consideration of bad faith, but also considered the financial circumstances of the parties. Moreover, plaintiff attempted to circumvent a non-modifiable section of the MSA in respect of his alimony and child support obligations. And, he was clearly in a superior financial position to defendant. Therefore, we affirm the award of counsel fees.

## VI.

Finally, plaintiff seeks a remand to a different trial judge in the event this matter is not reversed. He claims the judge "made comments against [his] interests in a manner demonstrating a commitment to findings[] [and] credibility conclusions" warranting her disqualification for future proceedings.

Our careful review of the record reveals the judge did not act in a manner as to result in an unfair or prejudiced outcome as governed by Rule 1:12-1(g), cited by plaintiff. Subsection (g) provides for the disqualification of a judge "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." We discern no reason to invoke Rule 1:12-1(g) in the matter under review. The record is devoid of any bias on the part of the judge against or in

26

favor of either party. Therefore, we reject plaintiff's argument that all future proceedings in this matter be assigned to a different judge.

To the extent plaintiff's brief raises any additional arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In sum, we:

(1) affirm the September 25, 2020 order;

(2) vacate and reverse the January 4, 2021 order insofar as it relates to the PC and direct entry of an appropriate PC order consistent with our opinion; and

(3) deny plaintiff's request to assign the matter to a different judge for future proceedings.

Affirmed in part; vacated, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27

A-0603-20