888 A.2d 426

TIMOTHY P. LYONS AND MICHELE LYONS, PLAINTIFFS–AP-PELLANTS, v. TOWNSHIP OF WAYNE AND GEORGE HOL-ZAPFEL, TOWNSHIP ENGINEER AND DIRECTOR OF PUB-LIC WORKS, DEFENDANTS–RESPONDENTS, AND JOHN DOE, DEVELOPER, DEFENDANT.

Argued September 27, 2005—Decided December 28, 2005.

*John Vincent Saykanic* argued the cause for appellants.

*Robert L. Podvey* argued the cause for respondents (*Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello,* attorneys; *Steven R. Tombalakian,* on the letter in lieu of brief).

*Timothy P. Lyons* and *Michele Lyons* submitted a brief, pro se.

Justice ZAZZALI delivered the opinion of the Court.

In this appeal, the Court must determine whether municipal defendants can be held liable under the New Jersey Tort Claims Act (TCA), *N.J.S.A.* 59:8–1 to –11, for increased flooding on plaintiffs' property. Plaintiffs allege that the flooding was caused by storm water runoff that originated on municipal property or was channeled onto plaintiffs' property by structures that the municipality erected, assertions the municipal defendants deny. The trial court granted summary judgment for the municipal

defendants and the Appellate Division affirmed. Both courts held that plaintiffs' claims are time-barred by the TCA's statute of limitations because the alleged nuisance is not a continuing tort and, regardless of the statute of limitations, plaintiffs failed to support their contentions with sufficient evidence.

Plaintiffs' allegations, if true, may establish a prima facie claim of continuing nuisance. We therefore vacate the grant of summary judgment and remand for further proceedings because the incomplete and confusing record in this matter prevents a determination whether there is, or is not, a genuine issue as to any material fact as required by *Rule* 4:46–2(c).

I.

In 1998, plaintiffs Timothy and Michele Lyons bought hillside property located at 60 Bolton Road in Wayne Township, New Jersey. Immediately above plaintiffs' property is municipal property that the Township owns and maintains as "a nature preserve." Two local roads, Mountain Road and Doreen Lane, also are situated at a higher elevation than plaintiffs' property on Bolton Road. Although all three streets, Mountain, Doreen, and Bolton, are open to public traffic, they are unimproved, privately-owned roads.

This area has a history of water problems. In 1986, prompted by complaints of flooding, a Township engineer investigated drainage conditions in the vicinity of Bolton Road. The engineer concluded that "water originates on large wooded property above the location, not from Township road, not from Newark water supply, not from Township water or sewer service, [and is] not [a] Township problem." In 1991, George Holzapfel, another Township engineer and a defendant in this suit, detailed the worsening drainage problems in the area. He noted that there "clearly is a water problem" on the hillside and, without assigning responsibility, stated that a remedy "would be expensive but ... necessary for the long term solution." Shortly after purchasing their home in 1998, plaintiffs noticed flooding in their rear yard following

rainstorms. They promptly communicated with Township officials, claiming that water runoff from Mountain Road, among other sources, was damaging their property. Then, on September 16, 1999, flooding from Hurricane Floyd caused great damage to plaintiffs' property, as water flowed into their garage and home.

In December 1999, plaintiffs filed a Notice of Tort Claim alleging that water from Mountain Road had caused damage to their house, garage, and yard. Plaintiffs also hired an engineering consultant to inspect their property. In his January 2000 report, the expert said that various structures and uphill improvements had changed the area's drainage patterns. He further indicated that the recent paving and curbing of Mountain Road acted to intercept storm water runoff from Mountain Road, channel the water to a concentrated flow, and direct the water toward plaintiffs' property. According to plaintiffs' expert, a raised berm and drainage ditch at the end of Doreen Lane acted to redirect uphill water, which naturally flowed downhill, laterally across the slope and onto plaintiffs' property, "[t]he net effect [of which] is the doubling of the flow against the house and garage at the lower reaches of [plaintiffs'] property." [1] The engineer qualified his opinions, however, by stating that

[i]t is beyond the scope of this investigation to undertake a detailed analysis of the total drainage area uphill from this house. Rather, a brief overview will be presented. If there is a need for further investigation, a review of topographic maps and the undertaking of a topographic survey will be needed.

On September 14, 2001, plaintiffs filed an action pro se against the Township, Township Engineer Holzapfel, and a fictitious property developer (collectively referred to as the Township). In their complaint, plaintiffs allege that the Township's actions "changed the topographical nature of the land" and "caused unnatural and/or unreasonable diversion of storm ... and surface waters, causing flooding upon [p]laintiffs' land." The Township responded by moving for summary judgment, asserting that plaintiffs had

---

[1] A berm is defined as "a narrow shelf, edge, or path typically at the bottom or top of a slope or along a bank." *Webster's Third New Int'l Dictionary* 206 (1976).

failed to allege wrongful conduct on the part of the Township within the TCA's two-year statute of limitations and had failed to present evidence that the Township caused the flooding.

Plaintiffs first contend that the recent curbing and paving of Mountain Road has increased water flow onto their property and that the Township is responsible for the paving and curbing. The Township admits that "stormwater [sic] flows coming off of Mountain Road eventually end up crossing the subject property" but depicts the flows as a longstanding problem that "has existed as long as Mountain Road existed (possibly 60 years)," far before the Township became involved in the road's development. A letter from the Township's mayor to plaintiffs states that Mountain Road's curbing "does not appreciably affect [plaintiffs'] property." Township Engineer Holzapfel, however, stated in an internal memorandum that changes in water runoff have occurred. Specifically, he noted that he "do[es] not know why over the past year we experience[d] a significant change in water problems in this area but a long term solution has to be considered." Township officials have offered various other theories to explain plaintiffs' water problems. A 1999 letter from the mayor to plaintiffs states that "most of the wet [on your property] comes from below grade geological conditions." Two years later, Holzapfel wrote to the mayor that "[m]uch of the problems [in the vicinity of 60 Bolton Road] stem from incomplete roadways."

Although Mountain Road is privately owned, plaintiffs claim that the Township is responsible for at least some of Mountain Road's paving and curbing. They cite public work orders from 1978 and 1986 that authorize repair of a curb and the construction of a berm on Mountain Road. The Township does not expressly deny or admit that allegation, and, in a letter to plaintiffs, the mayor stated that he does not know who built the road's curbs. In response to plaintiffs' interrogatory asking "[w]hat was done to correct the [water] problem," Holzapfel wrote that "minor asphalt berms were constructed to direct water towards the drainage

system." Holzapfel does not state when, where, or by whom those berms were built.

Plaintiffs' second claim is that a thirty-foot long drainage ditch, cut on a diagonal grade across Township property above their property, is contributing to flooding on their land. Plaintiff Timothy Lyons states in his certification that according to the tax map, "the two lots above plaintiff[s'] property are also owned by the Township ... and the Township ... has allowed a large drainage ditch [on its property] to divert water directly towards plaintiff[s'] property." The Township's response to that allegation is unclear. In the same letter discussing Mountain Road's curbing, the mayor denied Township responsibility for the construction of the ditch but apparently admitted that the ditch is on Township property. He stated: "We don't know when the ditch on municipal property was constructed. To our knowledge, the Town did not approve it."

Finally, plaintiffs argue that the berm constructed on Township property has increased the flow of water onto their land. Plaintiffs' expert report noted that the berm directs water runoff onto a neighbor's property which then runs across plaintiffs' land, resulting in the "doubling of the flow against [plaintiffs'] house and garage." Counsel for the Township claimed at oral argument both before this Court and the trial court that the berm is not located on Township property, but neither counsel could point to record evidence that establishes or disproves that fact. The Township denies responsibility for the berm's construction and states that the berm is not the proximate cause of plaintiffs' problems because the berm directs water onto plaintiffs' neighbor's land.[2]

---

[2] At the conclusion of oral argument, the Court invited plaintiffs' counsel to submit to the Clerk of the Court any "reference to the record on th[e] question" whether "the berm was directing water to [plaintiffs'] house." Six weeks later, plaintiffs submitted materials that are beyond the scope of, and non-responsive to, that invitation. We decline to consider those materials in this appeal without prejudice to plaintiffs presenting those materials to the trial court in accordance with the relevant evidentiary and procedural rules.

The trial court agreed with the Township and granted summary judgment in favor of defendants. The court held that plaintiffs had not alleged Township wrongdoing within the TCA's two-year statute of limitations. Apart from the statute of limitations, it found that the berm is located on Township property but concluded that the Township did not erect it because, "if the municipality installed the berm, there would be a record of it." The court speculated that the berm was built by plaintiffs' neighbor because its fill is similar to that on the neighbor's land. The trial court nevertheless concluded that there is an absence "of any evidence causally connecting the berm to the detrimental impact on plaintiffs' property." The court made no findings as to the location, construction, or effect of the drainage ditch and stated that "[i]t is undisputed that the municipality had no role in creating this adverse condition," that is, the storm water runoff from Mountain Road and Doreen Lane.

In an unreported decision, the Appellate Division adopted the findings and conclusions of the trial court, rejected plaintiffs' argument that the repeated flooding of their land constituted a continuing nuisance, and affirmed the grant of summary judgment. The panel held that a cause of action accrues as of the date of the incident giving rise to the cause of action. Because plaintiffs filed their action on September 14, 2001, their suit is limited to claims accruing within two years preceding that date. *N.J.S.A.* 59:8–8b. The Appellate Division held that "none of [their] claims of municipal wrongdoing occurred on or after September 15, 1999." Although plaintiffs maintained that their cause of action accrued on September 16, 1999, the day they suffered property damage because of Hurricane Floyd, the panel concluded that "the fact remains that it was prior to that date that plaintiffs were aware both of damage to the property and the alleged wrongful actions of the Township which they claim gave rise to a cause of action under the Tort Claims Act." We granted certification. 183 *N.J.* 213, 871 *A.*2d 91 (2005).

In our analysis, we first consider, as did the lower courts, whether the statute of limitations bars plaintiffs' claims. If the statute is not a bar, we then must determine whether, on this record, summary judgment was appropriate.

## II.

The TCA provides that a claimant must file suit within two years of the accrual of the claim. *N.J.S.A.* 59:8–8b. The Township maintains that because plaintiffs have not identified any wrongful conduct within that two-year limitation period, such as the paving and curbing of Mountain Road or the construction of the ditch or berm, their claims are not timely. Plaintiffs respond that each incursion of rainwater onto their land represents a separate and distinct injury under the continuing nuisance doctrine, and, therefore, they may recover for damages incurred on or after September 15, 1999.

In *Russo Farms, Inc. v. Vineland Board of Education,* we set forth principles governing the continuing tort doctrine. 144 *N.J.* 84, 675 *A.*2d 1077 (1996). There, after the municipality built a school on adjacent property, the property owners' farmland was intermittently flooded due to inadequate drainage measures. *Id.* at 93–94, 675 *A.*2d 1077. The plaintiffs became aware of the flooding in 1980 but did not sue until ten years later. *Ibid.* Finding for the plaintiffs, we characterized each flood as a physical invasion of the plaintiffs' land that contained all of the elements of a new tort. *Id.* at 106, 675 *A.*2d 1077. Individually, an instance of flooding is a trespass, but it is "also a nuisance if it is repeated or of long duration." *Id.* at 99, 675 *A.*2d 1077 (quoting *Restatement (Second) of Torts* § 821D cmt. e (1977)).

The Court then summarized the duties imposed on one who creates or maintains a continuing nuisance:

> When a court finds that a continuing nuisance has been committed, it implicitly holds that the defendant is committing a new tort, including a new breach of duty, each day, triggering a new statute of limitations. That new tort is an "alleged present failure" to remove the nuisance, and "since this failure occurs each day that

[defendant] does not act, the [defendant's] alleged tortious inaction constitutes a continuous nuisance for which a cause of action accrues anew each day." Essentially, courts in those cases impose a duty on the defendant to remove the nuisance. Because the defendant has a duty to remove the nuisance, and because the defendant's failure to remove the nuisance is a breach of that duty, each injury is a new tort.

[*Id.* at 99–100, 675 *A.*2d 1077 (citations omitted).]

The Court concluded that a nuisance is continuous when "it is the result of a condition that can be physically removed or legally abated." *Id.* at 103, 675 *A.*2d 1077. One who suffers a continuing nuisance, therefore, is "able to collect damages for each injury suffered within the limitations period." *Id.* at 100, 675 *A.*2d 1077 (citation omitted). Alternatively, a nuisance is permanent and does not constitute a continuing nuisance when "there is only one unceasing invasion of the plaintiff's interests," giving rise to only one cause of action. *Id.* at 102, 675 *A.*2d 1077 (quoting Dan B. Dobbs, *Law of Remedies*, § 5.4, at 343 (1973)).

█   In this matter, the lower courts found that the construction of the berm and drainage ditch as well as the improvement of nearby roads occurred before September 15, 1999. To be sure, as in *Russo Farms,* the conditions in this matter that led to the flooding apparently were created years prior to the filing of the action. When analyzing a nuisance, however, wrongful conduct is not limited to the creation of the condition. Rather, a failure to physically remove or legally abate that condition, resulting in the physical invasion of another's property, also constitutes wrongful conduct. *Id.* at 99–100, 103, 675 *A.*2d 1077. If plaintiffs' water problems are subject to abatement, then, to the extent that those problems qualify as a nuisance for which the Township is responsible, a subject discussed below, they also are a continuing nuisance.

## III.

█   In view of our holding that flooding can constitute a continuing nuisance, we now examine the trial court's grant of summary judgment. We consider whether there are genuine issues of material fact concerning both the cause of the nuisance

and the abatement of that nuisance. For the following reasons, we conclude that the grant of summary judgment to defendants was inappropriate.

The record in this appeal does not allow a complete summary of the facts or a determination whether there are material issues of fact. That the Township failed to submit a statement of material facts with its motion for summary judgment in part is responsible for the difficulty with the record. *See R.* 4:46–2(a). *Rule* 4:46–2(a) states that a motion for summary judgment must be accompanied by a statement that sets forth, in separately numbered paragraphs, "a concise statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted." The moving party, therefore, initially is responsible for showing the absence of disputed, material facts, and failure to file the required statement alone warrants denial of the movant's motion. *Ibid.* The party opposing the motion then must file a responding statement either admitting or disputing each of the facts in the movant's statement. *R.* 4:46–2(b). Thereafter, summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged." *R.* 4:46–2(c).

The Township failed to comply with those requirements. Rather, it chose to supplement its motion for summary judgment with a thirty-five item list of documents attached to its motion as exhibits. Plaintiffs, acting pro se, in turn did not file a response statement admitting or denying any facts, as normally required by *Rule* 4:46–2(b). Summary judgment requirements, however, are not optional. Indeed, some courts have chosen to sanction counsel for disobeying this very rule. *See Mandel v. UBS/PaineWebber, Inc.,* 373 *N.J.Super.* 55, 82–83, 860 *A.*2d 945 (App.Div.2004) (affirming trial court's imposition of sanctions on plaintiff's counsel for not complying with *Rule* 4:46–2(b)). A party's failure to

comply with the requirements of *Rule* 4:46–2 can result in a considerable waste of judicial time and resources when trial and appellate courts are forced to search for factual issues by sifting through voluminous and confusing records—work that should be performed by the parties. *Rule* 4:46–2 also plays the critical role of focusing the parties' and the court's " 'attention on the areas of actual dispute.' " *Claypotch v. Heller, Inc.,* 360 *N.J.Super.* 472, 488, 823 *A.*2d 844 (App.Div.2003) (citing Pressler, *Current N.J. Court Rules,* comment on *R.* 4:46–2 at 1657 (2003)). We expect that parties will comply with the appropriate summary judgment requirements in the future, and, if not, trial courts will consider the imposition of sanctions.

Because of the absence of the required statements in this appeal, the parties never focused their "attention on the areas of actual dispute." *Ibid.* The Township's admissions present inconsistent and perhaps contradictory explanations for plaintiffs' water problems. Further, the record provides no clear answers as to whether the Township paved or curbed Mountain Road or erected the drainage ditch and berm; whether any of those structures or improvements have proximately caused plaintiffs' water problems; or whether the ditch and berm are located on Township property. At the trial level the parties were unable to resolve those crucial factual questions. Neither the trial nor appellate court grappled with the record's discrepancies because they dismissed plaintiffs' claims as barred by the TCA's statute of limitations.

On the related issue of whether the nuisance is continuing, although the record suggests that the flooding of plaintiffs' land may be subject to abatement, that evidence also is unclear. Plaintiffs' expert's report makes several recommendations to solve the water problems. The Township's own internal memoranda reveal that it agrees that municipal drainage improvements could at least partially abate plaintiffs' flooding problems, conceding that a drainage project could reduce runoff onto plaintiffs' property by fifty percent. Other Township correspondence indicates that abatement might not be possible because plaintiffs' problems stem

from below grade geological conditions. Similar to the confusion surrounding the causation of the alleged nuisance, the record is incomplete concerning the facts of abatement.

As we have held in prior matters that have presented this Court with an inadequate record, we are unable to conclude that there is no genuine issue as to any material fact. *See Velantzas v. Colgate–Palmolive Co.,* 109 *N.J.* 189, 192, 536 *A.*2d 237 (1988) (reversing grant of summary judgment because proceedings were still in "preliminary stage"); *Salomon v. Eli Lilly & Co.,* 98 *N.J.* 58, 61, 484 *A.*2d 320 (1984) (noting inadequate record and stating that case "is not in a suitable posture for summary adjudication at this time"). Therefore, summary judgment was improvidently granted.

## IV.

In sum, we conclude that questions remain concerning the creation of the nuisance, proximate causation, the failure of the Township, if responsible, to abate the nuisance, the continuing nature of the tort, and any other defenses that may arise.[3]

We reverse and remand for proceedings consistent with this opinion.

---

[3] Plaintiffs must establish on remand that the Township's conduct was "palpably unreasonable." *N.J.S.A.* 59:4–2; *see Russo Farms, supra,* 144 *N.J.* at 97–98, 675 *A.*2d 1077. Further, defendants also may address whether plaintiffs were aware of the flooding before purchasing their property and, therefore, "came to the nuisance." Although New Jersey courts have considered coming to the nuisance as a factor in determining whether an actionable nuisance exists, *see, e.g., D'Andrea v. Guglietta,* 208 *N.J.Super.* 31, 37, 504 *A.*2d 1196 (App.Div.1986); *Benton v. Kernan,* 130 *N.J. Eq.* 193, 199, 21 *A.*2d 755 (E. & A.1941), this Court has never addressed the question. On remand, the parties may brief and argue the applicability of that precedent.

Finally, either party, the Township or plaintiffs, now represented by counsel, may make appropriate motions in accordance with *Rule* 4:46–2. We imply no position concerning the outcome of any such motion, or on the merits of the above questions. To the extent that there may be gaps in the record concerning any issues, it is the obligation of the parties—not of the courts—to fill them.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.