**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1806-22

DAVID SOLTERO and
ELIZABETH D. FRAGA,

     Plaintiffs-Appellants,

v.

M2M VENTURES GROUP, LLC,
461 MERCER, LLC, JOSEPH
DAMANTI, ALISHA EISENBERG,
NAJJAR GROUP REAL ESTATE,
and LUIS RIBAGORDA,

     Defendants-Respondents,

and

LPS CONTRACTORS INC.,

     Defendant,

and

MJ BUILDERS, LLC,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

MONROE CONTRACTING, LLC
and FIRST QUALITY
CONSTRUCTION CORP.,

Third-Party Defendants.

_____

Submitted February 13, 2024 – Decided July 9, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1430-20

Albert W. McKee (Byrne & O'Neill, LLP), attorney for appellants.

Errico Law Group, LLC, attorneys for respondents M2M Ventures Group, LLC, 461 Mercer, LLC, Joseph Damanti, and Alisha Eisenberg (Alexandra Errico, of counsel and on the brief).

PER CURIAM

In this residential real estate dispute, plaintiffs David Soltero and Elizabeth D. Fraga appeal the motion court's summary judgment dismissal of their complaint against defendants M2M Ventures Group, LLC, 461 Mercer, LLC, Joseph Damanti, and Alisha Eisenberg, and the denial of their reconsideration motion. Because the court improperly determined there was no genuine dispute of material facts and dismissed the complaint as a matter of law, we reverse and remand.

In March 2017, plaintiffs entered into a written contract with M2M to purchase 451 Mercer Avenue (the property), a two-family home in Jersey City, for $956,000, while the property was still being renovated. Damanti, one of M2M's two members with Eisenberg, signed the contract for M2M. Luis Ribagorda and Najjar Group Real Estate were the brokers for the sale.[1]

On April 27, the parties executed a supplemental contract, which named 461 Mercer as the seller instead of M2M. Among the added terms included 461 Mercer's "wish[] to close on the [p]roperty prior to the completion of the [renovations]." As such, the parties agreed $56,000 of the purchase price would be held in escrow by the closing attorney "after closing until such time as the [renovations have] been completed and [plaintiffs] confirm that all work has been completed to a workmanlike standard commensurate with the level of home being purchased." Damanti signed the supplemental agreement on 461 Mercer's behalf.

M2M contracted with LPS Contractors, Inc. to renovate the property. The contract required the renovations to be completed within forty-five days of LPS's

---

[1] Luis Ribagorda and Najjar Group were named defendants, but plaintiffs dismissed their claims against them. They are not participating in this appeal.

A-1806-22

initial receipt of payment. Later, LPS became MJ Builders, LLC.[2] LPS and MJ Builders were owned by the same person.

Prior to the property's July 5 closing, the contract was further amended, substituting 461 Mercer as the seller for M2M. The closing was held despite uncompleted renovations. Eisenberg, described in Damanti's prior text message to Soltero as his "partner," signed the deed as M2M's managing member. The deed identified M2M as 461 Mercer's managing member. Eisenberg also signed an affidavit of title and other closing documents, which named her as M2M's managing member and M2M as managing member of 461 Mercer. As agreed, $56,000 of the purchase price was held in escrow pending the renovations' post-closing completion.

For almost the next three years, plaintiffs complained numerous times to defendants that the unfinished and faulty renovations impeded their ability to rent the property's units. Break-ins caused damage to the property resulting in the installation of security cameras and more secure doors. A new water connection was installed to replace an illegal connection, requiring opening of

---

[2] LPS Contractors, Inc. and MJ Builders, LLC were named defendants, but plaintiffs later dismissed their claims against them. They are not participating in this appeal.

walls.  Buckling floors in one unit had to be replaced.  The water heating, ventilation, and air conditioning units were inadequate and faulty.  Plaintiffs also reported a leaky roof; shifting door frames; shower leaks; water damage caused by water channeling towards the house via the rear balcony; damage to the front siding necessitating replacement; improperly sealed windows; and skylight leaks causing damaged insulation.  Consequently, plaintiffs did not authorize the release of the $56,000 escrow monies to defendants.

In April 2020, plaintiffs filed a Law Division complaint seeking compensatory damages, attorney's fees, and costs from defendants and others for breach of contract, negligence, common law fraud, breach of express and implied warranties, negligent misrepresentation, and breach of the duty of good faith and fair dealing, as well as treble damages under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227.  Thereafter, a flurry of counterclaims, cross-claims, and a third-party complaint were filed.

In June and July 2022, plaintiffs spent $19,300 to repair the property's sewer lines and plumbing, requiring excavation of the sidewalk and landscaping and partial demolition of a wall.  The next month, plaintiffs sold the property for $1.125 million.

A-1806-22

At the close of discovery, defendants moved for summary judgment, relying upon a statement of undisputed material facts and supporting certifications with exhibits from Eisenberg and Damanti. Plaintiffs submitted a counter-statement of material facts with affidavits by Soltero and Santos, and exhibits, supporting facts they disputed. Plaintiffs' opposition brief contained no citations to the motion record. But in separately numbered paragraphs corresponding to the paragraphs in defendants' statement of facts, plaintiffs' counter-statement challenged numerous facts alleged by defendants and provided citations to portions of the motion record relevant to plaintiffs' responses. Consequently, the parties disputed the drafting of the supplemental agreement, Damanti and Eisenberg's involvement in the renovations, and whether M2M and 461 Mercer were separate independent entities at the relevant times.

Following argument, the court rendered an oral decision and issued an order dismissing plaintiffs' complaint and ordering release of the escrow funds to defendants. Citing Lyons v. Township of Wayne, 185 N.J. 426, 435 (2005), and Housel v. Theodoridis, 314 N.J. Super. 597, 604 (App. Div. 1998), the court determined the motion record raised no genuine issues of material fact because plaintiffs' opposition papers lacked "any concrete references" to factual disputes

to withstand summary judgment. Noting its high caseload and the number of motions it must decide, the court expressed frustration in having to determine if "[plaintiffs'] brief cites the specific factual support for [their] various arguments to create a genuine issue of material fact." It explained that as "a practical matter," it could not "look at all exhibits or emails attached" and "figure out which parts of those emails or . . . transcripts support the statement [a party is] making in [its] brief." Accordingly, the court did not consider plaintiffs' counter-statement of facts or affidavits when deciding the motion "because [they were not] specifically correlated within the brief to the different points."

After determining the facts set forth by defendants were undisputed, the court ruled they were entitled to judgment as a matter of law. It found 461 Mercer alone was the seller of the property, meaning Damanti, Eisenberg, and M2M could not be held liable for breach of contract, consumer fraud, negligence, or misrepresentation arising from plaintiffs' purchase of the property. The court also found Damanti, Eisenberg, and M2M could not be held liable under the CFA as commercial sellers of real estate when they were not sellers.

Considering the absence of evidence demonstrating a "genuine issue of material fact that [Damanti, Eisenberg, or M2M] . . . intentionally [did] anything

wrong or committed any frauds," the court held there was also no basis to pierce 461 Mercer's corporate veil and hold Damanti or Eisenberg individually liable. Additionally, the court determined plaintiffs' claims could not proceed without expert testimony, as "[k]nowing how a contractor did or didn't do construction work properly" is beyond the average juror's knowledge. Without an expert report, the court dismissed "the complaint entirely as it applies to any defendant [charged with] negligen[ce] or improper work on the construction contract or breach of contract for failing to live up to the promises in the contracts in question." The court directed release of the escrow funds to defendants due to its dismissal of plaintiffs' complaint.

On reconsideration, the court found no merit in plaintiffs' arguments and reiterated its reasoning that their brief did not adequately cite to the factual record. However, this time the court considered Soltero's opposition affidavit and ruled it, too, was inadequate to support plaintiffs' reconsideration motion because his statements often relied on his own emails and statements elsewhere in the motion record. The court further added that Soltero's affidavit relied on his own layperson's observations of the contractors' workmanship, rather than on expert testimony from an individual qualified to link the contractors' actions with the harm plaintiffs alleged.

II

Plaintiffs argue the trial court incorrectly found no genuine issues of material fact. They point out they "precisely" followed the directions set forth in Rule 4:46-2(b), submitting a responding statement of facts containing fifty-one numbered paragraphs, where plaintiffs disputed the facts set forth by defendants and "provid[ed a] citation to the underlying record for each numbered paragraph." Plaintiffs also supplied an affidavit from Soltero supporting the factual disputes they identified; Soltero's affidavit also cited to documents in the motion record, many of them attached as exhibits to the affidavit. His affidavit comported with his deposition testimony. Based upon our de novo review, we agree with plaintiffs. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022).

Plaintiffs complied with the rules governing summary judgment by submitting a counterstatement, in separately numbered paragraphs, "admitting or disputing each of the facts in the [moving party's] statement" and providing additional facts it, the non-moving party, believed were material and genuinely disputed. R. 4:46-2(b). They also adhered to Rule 4:46-5(a) by submitting Soltero and Santos' affidavits to support the facts they claimed were genuinely disputed. The motion court, however, did not determine whether "the pleadings,

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show" the moving party was entitled to summary judgment. Lyons, 185 N.J. at 435 (quoting R. 4:46-2(c)). The court's exclusive focus on plaintiffs' opposition brief rather than their supporting affidavits and documents in deciding whether to grant summary judgment is not compliant with our rules. See id.

While the court was correct in admonishing plaintiffs for their failure to cite to the motion record in their brief, Rule 4:46-2's citation requirements do not apply to motion briefs, only to the parties' statement and counter-statement of material facts. See id. Indeed, plaintiffs' reliance on Soltero's affidavit compares with defendants' reliance on Damanti and Eisenberg's certifications. This is unlike the non-moving parties in Lyons and Housel, who did not provide the trial court with an appropriately cited counter-statement of facts. Lyons, 185 N.J. at 435; Housel, 314 N.J. Super. at 602. Though the court correctly discerned that Housel requires "concrete evidence" and "specific facts" from the non-moving party "showing that there is a genuine issue for trial," 314 N.J. Super. at 604 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)), Housel also mandates a motion court must conduct a "'searching review' of the record" when determining whether a genuine issue of material fact exists,

id. at 603 (quoting <u>Brill v. Guardian Life Ins. Co. of Am</u>., 142 N.J. 520, 541 (1995)).

We are fully mindful of the court's heavy motion calendar and the need for litigants' submissions to enable the court's review to be done economically and expeditiously, especially involving fact-sensitive applications like the one presented in this manner. <u>See</u> <u>R.</u> 1:1-2(a) (stating court rules should be construed to "eliminat[e] . . . unjustifiable expense and delay"); <u>Code of Jud. Conduct</u> canon 3.9 (requiring judges to "dispose promptly of the business of the court"); <u>id.</u> canon 3.9 cmt. (balancing "due regard for the rights of the parties to be heard" with a judge's duty to resolve matters expeditiously). We empathize with the court's frustrations. Nevertheless, the court must still apply the rules and, if need be, it is preferable to direct plaintiffs to amend their briefs to assist the court in deciding to what extent their contentions set forth a genuine dispute of material facts preventing the grant of summary judgment. <u>See</u> <u>R.</u> 4:46-2(c).

III

In reviewing the record, we conclude plaintiffs' submissions adequately present a genuine dispute regarding defendants' role in the renovations of the property. They dispute whether Damanti, Eisenberg, and/or M2M had control over the activities of 461 Mercer, the entity listed on the closing documents as

11

the seller. They dispute when defendants' role in the renovation ended and where the contractors' role began. The motion record even raises doubt as to who hired the contractors and who performed the allegedly deficient construction plaintiffs identified.

Appellate review requires us to "first decide whether there was a genuine issue of material fact, and if none exists, then decide whether the trial court's ruling on the law was correct." Henry v. N.J, Dep't of Hum. Servs., 204 N.J. 320, 330 (2010). But if the facts relevant to the legal conclusion are disputed, then the court cannot reach the conclusion on summary judgment, see, e.g., Schneider v. Simonini, 163 N.J. 336, 359 (2000), even if the legal question would be case dispositive, see, e.g., Baskin v. Martinez, 243 N.J. 112, 132-34 (2020), and even if the legal issue would ordinarily be decided by the court instead of a jury, see, e.g., id. at 127-28.

There are disputed material facts that prevent us from resolving the legal issues: whether plaintiffs' claims to pierce the corporate veil to impose personal liability on Damanti and Eisenberg; and whether plaintiffs are entitled to relief under the CFA. There are also disputes regarding defendants' status as sellers.

Moreover, plaintiffs correctly point out they do not need to pierce 461 Mercer's veil to hold Damanti, Eisenberg, or M2M liable for the sale under the

12

CFA. The CFA covers a broad range of commercial activities where "any person" uses employs "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment . . . in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. This broad scope is reflected in Allen v. V & A Bros., Inc., where our high court held the CFA permits liability against both an entity and its individual employees and officers, regardless of whether the entity or the individual committed the "affirmative acts of misrepresentation to a consumer." 208 N.J. 114, 131-32 (2011).

Thus, the motion court should not have automatically dismissed plaintiffs' CFA claim simply because plaintiffs had not sufficiently pierced the corporate veil. The disputed facts do not support the trial court's application of the test, which permits piercing the corporate veil if "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." State, Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 501 (1983). It is unclear how much control each defendant had over the property's renovation or

over the entities involved. Nor is it clear whether defendants tried to commit fraud or circumvent the law, as the parties disagree even on their motives for drafting and signing the supplemental contract. Therefore, the court erroneously ruled veil-piercing did not apply. See Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 199 (App. Div. 2006) ("The issue of piercing the corporate veil is submitted to the factfinder, unless there is no evidence sufficient to justify disregard of the corporate form." (citing G-I Holdings, Inc. v. Bennet, 380 F. Supp. 2d 469, 477-78 (D.N.J. 2005))).

We disagree with the motion court's finding that plaintiffs need expert testimony to support their claim that defendants breached their standard of care as residential real estate sellers who were "marketing and selling . . . what was to be a fully renovated residential townhouse" to plaintiffs. Considering the noted deficiencies alleged by plaintiffs, the disagreements over the quality of the renovation can be determined by the average layperson. See Rocco v. N.J. Transit Rail Operations, Inc., 330 N.J. Super. 320, 341 (App. Div. 2000) ("Expert testimony is required when the subject matter to be dealt with 'is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable.'" (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982))). It does not take an expert

to opine whether in the newly renovated property:  the HVAC unit properly served its purpose; or that inferior workmanship caused buckling floors, a leaky roof, shower leaks, shifting door frames, front siding to be replaced, skylight leaks, or improperly sealed windows.  The average juror does not need expert's testimony to appreciate if these renovations were not properly done.  It is up to plaintiffs to establish which, if any, defendant is liable for the faulty repair work, and the damages sought.  Nonetheless, this does not bind the trial court from ruling that a particularly nuanced contention at trial may be barred due to failure to provide an expert opinion.

Given our conclusion that summary judgment should not have been granted, it is unnecessary to address the motion court's denial of plaintiffs' reconsideration motion.  As we acknowledged, the court on reconsideration reviewed Soltero's opposition affidavit, ruling it was inadequate to establish a genuine dispute of material facts to deny summary judgment. However, as noted we find the affidavits by Soltero and Santos set forth genuine disputed material facts to deny summary judgment.  Defendants shall redeposit the $56,000 into escrow with the closing attorney, or in the alternative deposit the funds with the trial court.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION