**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2883-21

LISA HUTCHINSON,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
LIEUTENANT RYAN VALENTIN,
MAJOR WAYNE MANSTREAM,
SERGEANT CHRISTOPHER
ANTONIELLO, and DIRECTOR
GUY CIRILLO,

    Plaintiffs-Respondents.

_____

Submitted December 13, 2023 – Decided October 29, 2024

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0186-18.

Chance & McCann, LLC, attorneys for appellant (Kevin P. McCann and Claudia J. Gallagher, on the briefs).

Greenbaum, Rowe, Smith & Davis, LLP, attorneys for respondents State of New Jersey, Department of Corrections, Major Wayne Manstream, Sergeant Christopher Antoniello and Director Guy Cirillo (Jemi G. Lucey and Maja M. Obradovic, of counsel and on the brief; Joel Clymer, on the brief).

Marshall, Dennehey, Warner, Coleman & Goggin, attorneys for respondent Lieutenant Ryan Valentin (Richard L. Goldstein and Walter F. Kawalec, III, on the brief).

The opinion of the court was delivered by

ACCURSO, P.J.A.D.

Plaintiff Lisa Hutchinson, a now-retired senior corrections officer, formerly an instructor at the Department of Corrections' Training Academy, was involuntary transferred out of the Academy in 2016 after receiving a five-day suspension for insubordination.[1] She claimed her advocacy on behalf of five Black trainees allegedly assigned extra push-ups in 2014 because their hair did not meet the Academy's grooming standards spurred a hostile work environment based on her race and sex and led to several instances where she was singled out for criticism and mistreatment by the ranking officer,

---

[1] Although plaintiff's penalty was reduced to a written reprimand and a one-year bar for application to any specialized unit on her appeal to the Joint Union Management Panel, Department regulations prohibit instructors at the Academy from having incurred any disciplinary sanction within three years of assignment.

Lieutenant Valentin, who denied her permission to attend the 2014 conference of the Mid-Atlantic Association for Women in Law Enforcement; ordered her to remove her name as an instructor that same year on a course taught by the Department at Camden County College; reprimanded her in 2015 for failing to advise him that one of the recruits was HIV-positive, thus preventing the timely notation in the recruit's medical file to employ universal precautions in the event of a medical emergency; blocked her from teaching classes necessary to retain her instructor certificate; failed to include her on a list for firearms training that year; prevented her from attending the 2015 graduation ceremony; and in 2016 initiated the insubordination charges resulting in her transfer after she told him she intended to file a harassment complaint against him during a heated exchange on March 29, 2016, over the proper way to assist a recruit in remediating a failed exam.

Plaintiff appealed the disciplinary action, and a departmental hearing was conducted by a hearing officer from the Department's Office of Employee Relations at which both Valentin and plaintiff testified. The Department contended Valentin ordered plaintiff to write a report on March 29, the date of their heated exchange, explaining how she performed remediation with trainees; that she was required to have submitted that report by the end of her

shift at 10:00 p.m.; and had not done so as of the date of the hearing almost a month later. The Department claimed the Rules and Regulations applied to all custody staff, and plaintiff's failure to comply with a lawful order by not submitting the report by the end of her shift was insubordinate. Plaintiff's union representative contended the charge was frivolous and filed in retaliation for plaintiff having filed a complaint with the Department's Equal Employment Division (EED). He claimed plaintiff tried to submit a report, but it was not accepted by the Academy administration.

Plaintiff testified that Valentin had ordered her to write a special report "about how she did not know how to do remediations." Plaintiff claimed she responded by asking to speak with the Director of the Academy, and that she "was going to file a harassment complaint." She also claimed that she wrote her special custody report that evening "and she was going to turn it into the Director" but was told by Sergeant Antoniello, another named defendant, that the Director would not be in that evening and that she should "go home." She testified that after she was interviewed for the Department's internal investigation on April 4, "she tried to turn her report over to Director Cirillo," also a named defendant, "but the Director refused and told her that he did not want to violate the chain of command."

4

On cross-examination, plaintiff explained she didn't give Antoniello her report because he told her to go home. Further, she testified "Antoniello never asked for the report nor did she ever offer it to him," although admitting "for a normal incident, she would turn her report into a supervisor," not the Director of the Academy. The hearing officer wrote that "[w]hen asked to explain why she did not turn in the report at a later date, SCO Hutchinson stated, 'No one asked for the report.'" After hearing the evidence, the hearing officer sustained the charge of insubordination and the five-day suspension.

Plaintiff appealed through her union to the Joint Union Management Panel (JUMP) established for the review of minor discipline, which modified the suspension "to an Official Written Reprimand (time served) with no back pay" and barred plaintiff from applying to a specialized unit for one year.

Following an investigation of plaintiff's complaints of discrimination and retaliation by Valentin dating from 2014, the EED issued a report in 2017 failing to find any violation of the Department's Policy Prohibiting Discrimination in the Workplace or the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14. The EED detailed its investigation into plaintiff's allegations and its findings in an eleven-and-a-half-page single-spaced letter to her.

A-2883-21

Plaintiff appealed the adverse finding to the Civil Service Commission. In an affidavit submitted in support of her appeal, plaintiff averred that Valentin had ordered her to complete a special custody report about how she "didn't know how to remediate," to which she responded by asking to speak to the Director and advising Valentin that she "would be filing a harassment complaint against him." Plaintiff explained she completed the report but did not turn it in as she "had intended to give it to Dir[ector] Cirillo." She also averred that she had attempted to turn it in to the Director and Major Manstream, another named defendant, on April 4, the same day she filed her EED complaint, but neither would accept it.

Plaintiff also appealed her discipline, requesting that either "the charges be completely reversed, or in the alternative, . . . if the . . . Commission upholds the Official Written Reprimand, [that] she should receive back pay for five days and not be banned from applying to unit for one year." The Civil Service Commission consolidated plaintiff's appeal of the EED's determination with her appeal of the discipline "due to common issues presented."

The Commission rejected plaintiff's appeal of her discipline, finding she didn't "dispute that [Valentin] ordered her to file a report with him on the March 29 incident, that she did not turn the report in to him that day as

A-2883-21

ordered, and that he was the appropriate person to receive the report under the appointing authority's chain of command." The Commission also rejected plaintiff's discrimination appeal, concluding plaintiff had failed to establish "that she has been subjected to violation of the State Policy" Prohibiting Discrimination in the Workplace. The Commission noted the EED had interviewed fourteen witnesses, including all of the witnesses plaintiff identified with personal knowledge of the events, Valentin, and reviewed numerous documents. The Commission found "the investigation was thorough and impartial," and that plaintiff had not met her burden of proving otherwise.

Judge Morgan granted the Department's motion for summary judgment, finding plaintiff could not establish her claims for employment discrimination, retaliation, or hostile environment under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49, and that her CEPA claim was time-barred.[2] The judge found plaintiff established a prima facie case of race and

---

[2] Plaintiff has not appealed the trial court's dismissal of her CEPA claims as time barred. She also failed to brief the aiding-and-abetting claims against the individual defendants in her merits brief. In response to the State noting that failure, plaintiff in her reply brief claims the issue wasn't briefed because the claims were dismissed based on the dismissal of her LAD claim. She argues "[a]iding and abetting is not separately addressed as there was no independent basis for summary judgment to be granted and there is nothing further to argue

A-2883-21

sex discrimination under the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), as it is undisputed plaintiff is a member of a protected class, was performing her job as an instructor at the Academy and was involuntarily transferred from that position, which qualifies as an adverse employment action under <u>Mancini v. Twp. of Teaneck</u>, 349 N.J. Super. 527, 564 (App. Div. 2002).

The judge also found, however, that the Department "articulated legitimate and non-discriminatory business reasons for plaintiff's transfer." Specifically, plaintiff did not dispute that the Department requires all women trainees to keep "their hair neatly groomed, trimmed, arranged and styled so its

_____

beyond what has already been argued in regard to the other claims." We disagree.

Aiding-and-abetting liability under N.J.S.A. 10:5-12(e) "require[s] active and purposeful conduct." <u>Tarr v. Ciasulli</u>, 181 N.J. 70, 83 (2004). On summary judgment, plaintiff presented no direct evidence that any of the individually-named defendants had engaged in race or sex discrimination. Our Supreme Court has cautioned against confusing "the significance of a supervisor's act as a basis for an employer's liability with the significance of those same acts for purposes of the supervisor's individual liability." <u>See</u> <u>Cicchetti v. Morris Cnty. Sheriff's Off.</u>, 194 N.J. 563, 595 (2008). Plaintiff failed to brief how the acts of the individual defendants exposed them to aiding-and-abetting liability under the statute. We therefore deem the claims abandoned. <u>See</u> <u>New Jersey Dep't of Env't Prot. v. Alloway Twp.</u>, 438 N.J. Super. 501, 505 n.2 (App. Div. 2015); Pressler & Verniero, <u>Current N.J. Court Rules</u>, comment 5 on <u>R.</u> 2:6-2 (2025) (noting the well-settled principle "that an issue not briefed is deemed waived").

bulk or length will not touch the ears or uniform shirt collar," and must not interfere with the "wearing of all emergency" and "defensive tactics headgear." Judge Morgan found the evidence on the motion established the Department enforced its grooming policies for all trainees, regardless of race or sex (men are required to shave their heads bald) and that enforcement "is necessary to allow officers to effectively equip themselves with riot headgear."

Plaintiff also acknowledged Department policy prohibits correctional officers from receiving any remuneration for acts undertaken in their official capacity, such as teaching a course at a local college. She admitted there was a $35 fee listed for the course she was scheduled to teach, and that she had failed to advise Valentin she was not charging a fee prior to him becoming aware and concerned that she would be receiving a fee in violation of the Department's ethics rules.

Lastly, it was undisputed that plaintiff's transfer from the Academy was as a result of her sustained insubordination charge arising out of her failure to submit the special custody report Valentin ordered her to submit on March 29, before she finished her shift. Plaintiff admitted on the motion that Valentin had ordered her to submit the report before she asked to speak to the Director and told Valentin she intended to file a harassment complaint against him. She

9

also admitted the hearing officer found she was insubordinate on her appeal of that charge, although the penalty was reduced to a written reprimand by the JUMP panel, which the Civil Service Commission let stand. As Department policy was clear that instructors could not serve at the Academy if they had incurred a sustained disciplinary charge within three years, plaintiff was transferred out of the Academy.

After giving plaintiff the benefit of all factual inferences to be drawn from the evidence considered in the light most favorable to her, Judge Morgan found plaintiff failed to establish the sort of inconsistencies or implausibilities in the Department's proffered reasons that could allow her to get to a jury on the issue of pretext. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (holding to avoid a "summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).") (citations omitted); Greenberg v. Camden City Vocational Tech. School, 310 N.J. Super. 189, 200 (App. Div. 1998).

As to plaintiff's hostile work environment claim, Judge Morgan found that even viewing the evidence on the motion in the light most favorable to plaintiff, a "rational factfinder could not resolve this dispute" in her favor. First, he noted that with regard to "the incidents relating to the HIV positive trainee, the firearms training course and the graduation ceremony," plaintiff testified at deposition that she didn't think they were based on her race or sex, meaning she could not rely on the incidents to support her hostile environment claim. See Herman v. Coastal Corp., 348 N.J. Super. 1, 20 (App. Div. 2002) (speaking of a sexually hostile work environment claim, "[t]he defining element in hostile work environment cases is not that the conduct was sexual in nature, but that the harassment occurs because of the employee's gender"). And none of the individual defendants had anything to do with setting up the instruction cycles plaintiff complained she was not scheduled to participate in.

Judge Morgan found no reasonable jury could conclude the remaining incidents, the issue over the Black trainees' hair, the initial denial of plaintiff attending the Women in Law Enforcement conference, and the insubordination charge, were sufficient to establish a hostile work environment based on plaintiff's race or sex. As to the Department's grooming policy, there is no evidence in the record that Valentin singled plaintiff out for criticism. The

11

record reveals he called a meeting attended by seven or ten other instructors, men and women, white and Black, in which he reprimanded all of them for not enforcing the Department's grooming policies. There was ample evidence in the record that plaintiff's initial requests to attend the conference were denied because plaintiff had failed to complete the Department forms required for approval. And plaintiff's insubordination charge and subsequent transfer the judge had already found were supported by a legitimate business reason "entirely separate and apart from her gender or race."

The judge noted that the Academy, like the rest of the Department, is a quasi-military organization, "governed by policies that must be enforced," and that the interrelationships among staff "are more structured" and their communications perhaps more "abrupt than [in a] non-military working environment." The judge concluded that plaintiff simply failed to demonstrate that any actions by defendants were sufficiently "severe and pervasive" to make a reasonable Black woman believe her working conditions were altered due to her protected class status. See Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603 (1993).

Although the judge was satisfied plaintiff established a prima facie case of retaliation based on her advocacy for the Black trainees and the

A-2883-21

insubordination charge and her subsequent transfer, he found the Department had articulated legitimate and non-discriminatory reasons for the actions it took in regard to each, and that plaintiff had not marshaled evidence to create a factual dispute that the Department's reasons were pretextual.

Plaintiff appeals, contending the trial court erred in dismissing her discrimination claim without consideration of the disparate impact on plaintiff and the five trainees of "Valentin's 'race neutral'" application of the grooming policy; that the proofs on the motion record showed "a pattern of antagonism" satisfying the "severe and pervasive" requirement, thus demonstrating the court's error in dismissing her hostile environment claim; and that the court erred in dismissing her retaliation claim based on a dispute of fact as to plaintiff's efforts to turn in her special report by the end of her shift.

We deem plaintiff's first two points as without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). Plaintiff never attempted to establish a disparate impact case and the proofs in the record fall far short of doing so. See Schiavo v. Marina Dist. Dev. Co., LLC, 442 N.J. Super. 346, 370 (App. Div. 2015) ("An adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact.") (quoting Massarsky v. Gen. Motors Corp., 706 F.2d 111, 121 (3d

Cir.), cert. den., 464 U.S. 937 (1983)). The trial court was undoubtedly correct that no reasonable jury could find a hostile work environment based on those incidents occurring over a two-year period that plaintiff attributed to her race or sex under the Lehmann standard.

Plaintiff claims the court erred in dismissing her retaliation claim because it overlooked the testimony in her deposition that she attempted to turn in her special custody report to Antoniello before the end of her shift on the day Valentin had ordered her to write the report on how she conducts remediations. In her Rule 4:46-2(b) statement of material facts, plaintiff claimed that "[a]fter plaintiff wrote the report, she spoke to Sgt. Antoniello who told her he could not accept the report. He also told her to leave the building until Lt. Valentin left and wait for Director Guy Cirillo. Director Cirillo never arrived, but Sgt. Antoniello still said he could not take the special."

Plaintiff supported the statement with a specific reference to her deposition in which she testified:

> Sergeant Antoniello said: Well, you can't write a special and give it to me because at this point you say that you wanted to file charges against him. So therefore, now we can't even discuss him at all.

14

So he told me to — he told me to go on the other side and wait a minute. I went on the other side. He comes out and says: I contacted Director Guy Cirillo. I want you to leave the building until Lieutenant Valentin is gone.

Once Lieutenant Valentin left, I came back to the building and I waited for Director Cirillo, [who] never showed up. By then Sergeant Antoniello came in there and he said: Guy's not — he's not here yet. So I'm just going to release you. Just go home.

I asked him again: What am I supposed to do with the special? He said: I can't take nothing — I can't take nothing from you, Hutch.

And that's how kind of just went — it ended, that night ended with him sending me home and nobody asked — nobody taking the special.

When defense counsel followed up by asking: "So you never turned the report in?" Plaintiff replied: "Nobody would take the report to turn it in. There was no one to turn it in to."[3] Antoniello was asked at his deposition whether

---

[3] The Department responded to plaintiff's statement of material fact by replying:

State Defendants admit only that Hutchinson testified at her deposition consistent with the assertions contained in this paragraph. This court should disregard this paragraph as it is not sufficient to create a disputed issue of material fact on summary judgment for the reasons provided in response to Paragraphs 5 to 11 and 14 to 61 of the RRSOUMF, which

plaintiff had tried to turn in the report to him that night. He responded by saying: "No, she was very adamant about not writing the report."

Summary judgment is, of course, only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c). We, thus, would ordinarily agree with plaintiff that the trial court overlooked a dispute over a genuine issue of fact material to plaintiff's retaliation claim — that plaintiff was prevented from submitting her special custody report on the day it was due because Antoniello refused to accept it after plaintiff announced her intention to file a harassment complaint

---

defendants identify as "State defendants' response to plaintiff's response to State defendants' statement of undisputed material facts."

That is, without doubt, an inappropriate way to respond to an adversary's statement of material facts — by referring the court to fifty-three responses explaining why the "court should disregard this paragraph as it is not sufficient to create a disputed issue of material fact on summary judgment." The Rule requiring statements of material fact is "intended to focus . . . attention on the areas of actual dispute" and "significantly facilitate the court's review" of the motion papers, Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:46-2 (2025), not force the trial (and appellate) court to wade through pages of redundant argument in search of specific facts. See Lyons v. Twp. Of Wayne, 185 N.J. 426, 435-36 (2005) ("A party's failure to comply with the requirements of Rule 4:46-2 can result in a considerable waste of judicial time and resources when trial and appellate courts are forced to search for factual issues by sifting through voluminous and confusing records — work that should be performed by the parties.").

against Valentin. Obviously, if defendants impeded plaintiff from complying with a lawful order and then charged her with insubordination for failing to comply, plaintiff's retaliation claim should not have been decided on summary judgment. See Parks v. Rogers, 176 N.J. 491, 502 (2003) ("Plaintiff was entitled to submit her case to a jury unless defendants sustained their 'burden of showing clearly the absence of a genuine issue of material fact.'") (quoting Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954)).

But here, the factual dispute is created not by the conflicting statements of the parties but by plaintiff's own conflicting sworn statements at the departmental hearing and in an affidavit to the Civil Service Commission about why she failed to turn in her special before the end of her shift, and her deposition testimony cited in opposition to summary judgment. Although at her deposition plaintiff testified she failed to turn in the report because Antoniello refused to accept it, she testified at the departmental hearing she didn't give it to Antoniello because he told her to go home, and he "never asked for the report" and she never "offer[ed] it to him." In her affidavit to the Civil Service Commission, she swore she completed the report but did not turn it in because she "had intended to give it to Dir[ector] Cirillo."

Although our Supreme Court has stated unequivocally that "[s]ham facts should not subject a defendant to the burden of a trial," it has also explained that trial courts should not grant summary judgment where the contradiction between a party's sworn statement and her deposition testimony "is reasonably explained, where an affidavit does not contradict patently and sharply the earlier deposition testimony, or where confusion or lack of clarity existed at the time of the deposition questioning and the affidavit reasonably clarifies the affiant's earlier statement." Shelcusky v. Garjulio, 172 N.J. 185, 201 (2002).

This case presents that patent and sharp contradiction. We are convinced plaintiff's material fact statement claiming that after she wrote the report Valentin ordered prior to ending her shift, "she spoke to Sgt. Antoniello who told her he could not accept the report" was appropriately disregarded in light of her earlier sworn testimony that she didn't give Antoniello her report because "he told her to go home" and that "Antoniello never asked for the report nor did she ever offer it to him." See Carroll v. New Jersey Transit, 366 N.J. Super. 380, 388 (App. Div. 2004) (noting "where [a] plaintiff's contradiction is unexplained and unqualified, he 'cannot create an issue of fact simply by raising arguments contradicting his own prior statements and representations.'") (quoting Mosior v. Ins. Co. of N. Am., 193 N.J. Super. 190,

A-2883-21

195 (App. Div. 1984)).  See also Metro Mktg., LLC v. Nationwide Vehicle Assurance, Inc., 472 N.J. Super. 132, 137 (App. Div. 2022) (applying the sham affidavit doctrine to hold the trial court appropriately disregarded on summary judgment a "side-switching employee's certifications" disavowing prior deposition testimony given when he was employed by a competitor).

Plaintiff's material fact statement about attempting to submit her special custody report to Antoniello, who refused to accept it, provided no impediment to the entry of summary judgment on plaintiff's retaliation claim given her earlier sworn statements that she had never offered the report to him.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2883-21